OPINION
{¶ 1} This case involves the issue of whether Delfino Mendoza was an employee or an independent contractor for purposes of insurance policies issued to Appellants, Lawrence Bishop, Darlene Bishop, and Solid Rock Ministries, International (Solid Rock). One policy is a personal liability policy issued to the Bishops by appellee, Claims Co International, Inc./Clarendon National Insurance Co. (ClaimsCo/Clarendon). The other policy is a business automobile policy that Indiana Insurance Company (Indiana) issued to Solid Rock.
 {¶ 2} Lawrence and Darlene Bishop are pastors at Solid Rock and are also involved with a sole proprietorship named "Lawrence Bishop" (a/k/a "LB Ranch"). LB Ranch is a horse farm that produces and sells horses. Typically, the ranch has around 100 horses that are cared for by workers. Delfino Mendoza was one such worker, who was employed at the ranch for about six years, from 1994 to December 2000. Mendoza's job was to feed and water the horses twice daily, and to clean the stalls every day, except on weekends. Initially, Mendoza was paid $250 per week and received a rent-free apartment on the ranch. About two or three years after Mendoza started work, his wage was raised to $300 per week, without any change in duties. He continued to live rent-free in the apartment.
 {¶ 3} On August 10, 2000, Mr. Bishop drove a Ford Expedition truck to an area near a barn on the ranch. The Ford Expedition was titled in Solid Rock's name, was insured by Indiana, and was provided to Mr. Bishop for his use. Mr. Bishop's intent was to hook up wagons to the truck, and take the wagons to Solid Rock for use in harvesting hay grown on the church property. Bishop then intended to bring the hay back to the ranch to feed his horses.
 {¶ 4} When Bishop arrived at the wagons, Mendoza was working nearby and came to help. However, Mendoza was seriously injured while attempting to hook the wagons to the truck. Mendoza subsequently brought a personal injury action against Mr. Bishop, claiming that Bishop had negligently backed the truck into Mendoza, crushing him between the truck and a wagon. Solid Rock was also named as a defendant, based on an allegation that Mr. Bishop was Solid Rock's agent or employee. An amended complaint added Mrs. Bishop as a defendant, based on allegations that both she and Mr. Bishop negligently failed to train Mendoza on how to properly attach the wagon to another vehicle. A further claim of negligence was based on the Bishops' failure to employ safety devices or other methods or personnel to avoid the injury. Solid Rock was alleged to be responsible on a respondeat superior basis, and for negligently entrusting the Ford Expedition to Mr. Bishop.
 {¶ 5} Subsequently, ClaimsCo/Clarendon and Indiana each filed a declaratory judgment action, seeking to avoid coverage on the basis that Mendoza was an employee at the time of the accident. After all three actions were consolidated, the insurers both filed summary judgment motions on the employment issue. In addition, Indiana raised the issue of whether a workers' compensation exclusion in its policy precluded coverage, since Mendoza had been awarded workers' compensation benefits.
 {¶ 6} The trial court agreed with the insurers that Mendoza was an employee and that coverage did not exist under their policies at the time of the accident. However, the court refused to rule on the workers' compensation issue, finding it moot. The court also refused to rule on Mrs. Bishop's summary judgment motion on the merits of the personal injury case, as the parties had been told only to address the issue of Mendoza's employment status.
 {¶ 7} Because the trial court included a Civ. R. 54(B) certification, the Bishops and Solid Rock filed a notice of appeal. They now raise the following assignments of error:
 {¶ 8} I. The trial court erred in granting Plaintiff-Appellees [sic] motions for summary judgment and not reserving the issue of employment status for the jury.
 {¶ 9} II. The trial court erred in concluding that Plaintiff Delfino Mendoza was an employee of the Defendants-Appellants Lawrence and Darlene Bishop and Solid Rock Ministries, International.
 {¶ 10} III. The trial court erred in concluding that no genuine issue of material fact existed as to whether Plaintiff Delfino Mendoza was an employee of the Defendants-Appellants Lawrence and Darlene Bishop and Solid Rock Ministries, International.
 {¶ 11} After reviewing the facts and applicable law, we find that the assignments of error should be sustained in part and overruled in part. Accordingly, the judgment against Lawrence Bishop will be affirmed, and the judgments against Solid Rock and Darlene Bishop will be reversed.
 I {¶ 12} While three assignments of error are raised, appellants essentially claim that the trial court erred in granting summary judgment, due to factual disputes about Mendoza's employment status. Accordingly, we will consider all the assignments of error together.
 {¶ 13} We review summary judgment decisions de novo, which means that "we apply the standards used by the trial court." Brinkman v. Doughty
(2000),140 Ohio App.3d 494, 496. Summary judgment is appropriately granted where the trial court finds: "(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 66.
 {¶ 14} Notably, an award of summary judgment does not depend on the absence of any factual disputes. Instead, there must be "a genuine issue of material fact." After reviewing the evidence most favorably for appellants, we do not find any genuine disputes of material fact that would preclude summary judgment on the issue of whether Mendoza was an employee. For reasons that will be explained later, this does not mean that summary judgment was proper in connection with the coverage claims of Solid Rock and Darlene Bishop.
 {¶ 15} Taking the ClaimsCo/Clarendon policy first, the named insureds on the policy were Lawrence and Darlene Bishop. The policy provided personal liability coverage of $1,000,000 for each occurrence, for the named insureds (the Bishops) in connection with 100 acres in Butler County. There is no dispute that the covered property was the LB Ranch, where the injury occurred. Under Coverage L of the personal liability section, ClaimsCo/Clarendon agreed to pay all sums for which an insured is liable due to bodily injury caused by an occurrence to which the personal liability coverage applies. ClaimsCo/Clarendon further agreed to defend such lawsuits on behalf of the insured. However, the policy also contains exclusions from coverage.
 {¶ 16} Pertinent to this case is that the personal liability coverage "does not apply to: * * * `bodily injury' or `property damage' to a `farm employee' of an `Insured' if it occurs in the course of employment by the `Insured' or the consequential injury to a spouse, child, parent, brother, or sister of such injured employee." The policy defines a farm employee as "an employee of an `Insured' whose duties are in connection with the farming operations of the `Insured.'" In addition, the policy defines "farming" as "the ownership, maintenance, or use of premises for the production of crops or the raising or care of livestock, including all necessary operations."
 {¶ 17} Because Mendoza cared for the horses on the ranch, his duties were clearly connected to the farming operations. The relevant question is whether Mendoza was a employee at the time of the accident.
 {¶ 18} The policy Indiana issued to Solid Rock also provided liability coverage, with certain exclusions for injury to employees of an insured. Solid Rock's policy was a Business Automobile Liability policy with limits of $1,000,000. In the liability coverage section, Indiana agreed to pay all sums an "`insured' legally must pay as damages because of `bodily injury' or `property damage' to which this insurance applies, caused by an `accident' and resulting from the ownership, maintenance or use of `covered autos.'"
 {¶ 19} The Ford Expedition was listed by the policy as a covered auto. Additionally, the policy defined an "insured" as:
 {¶ 20} "a. You for any covered `auto.'
 {¶ 21} "b. Anyone else while using with your permission a covered `auto' you own, hire, or borrow * * *."
 {¶ 22} There is no dispute that Mr. Bishop was considered an "insured" under the Indiana policy, since he had permission to drive the Ford Expedition at the time of the accident.
 {¶ 23} Under the exclusion section, Indiana stated that the liability coverage would not apply to:
 {¶ 24} "4. Employee Indemnification and Employer's Liability
 {¶ 25} "`Bodily injury' to:
 {¶ 26} "a. An employee of the `insured' arising out of and in the course of:
 {¶ 27} "(1) Employment by the `insured'; or
 {¶ 28} "(2) Performing the duties related to the conduct of the `insured's' business * * *."
 {¶ 29} "* * *
 {¶ 30} "This exclusion applies:
 {¶ 31} "(1) Whether the `insured' may be liable as an employer or in any other capacity; and
 {¶ 32} "(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury."
 {¶ 33} Again, there is no dispute that Mendoza was performing duties related to the conduct of Mr. Bishop's business. The dispute concerns whether Mendoza was an employee or an independent contractor.
 {¶ 34} "Whether one is an independent contractor or in service depends upon the facts of each case. The principal test applied to determine the character of the arrangement is that if the employer reserves the right to control the manner or means of doing the work, the relation created is that of master and servant, while if the manner or means of doing the work or job is left to one who is responsible to the employer only for the result, an independent contractor relationship is thereby created."Gillum v. Industrial Comm. (1943), 141 Ohio St. 373, at paragraph two of the syllabus.
 {¶ 35} The Ohio Supreme Court has indicated that in applying this test,
 {¶ 36} "[t]he determination of who has the right to control must be made by examining the individual facts of each case. The factors to be considered include, but are certainly not limited to, such indicia as who controls the details and quality of the work; who controls the hours worked; who selects the materials, tools and personnel used; who selects the routes traveled; the length of employment; the type of business; the method of payment; and any pertinent agreements or contracts." Bostic v.Connor (1988), 37 Ohio St.3d 144, 146.
 {¶ 37} In arguing that Mendoza was not an employee, appellants focus on certain points, like the fact that Mendoza had no specific time to report to work and was not told how many hours he had to work. However, our review of the facts indicates that there was insufficient evidence of an independent contractor relationship to let reasonable minds reach differing conclusions on the issue. The matter, therefore, was a question of law for the court. 37 Ohio St.3d at 146-47, citing O'Day v. Webb
(1972), 29 Ohio St.2d 215.
 {¶ 38} Depositions taken in the case indicate that Mendoza was born in Mexico and came to work in the United States in 1994, at the age of 17. After working for another individual for six months, feeding horses and cleaning stables, Mendoza met Lawrence Bishop, who was also in the horse business. Bishop asked Mendoza to work for him, and Mendoza agreed. As part of the negotiations, Mendoza was given $250 per week and a free apartment in which to live. The apartment was located in the stud barn at the LB Ranch.
 {¶ 39} When Mendoza was hired, Bishop knew he was an illegal alien. Mrs. Bishop took care of the payroll and books, and insisted that Mendoza have a green card before he would be given a W-2 form. Because Mendoza never obtained a green card in the nearly six-year period that he worked at the farm, he did not receive any W-2 forms. However, the Bishops did intend to issue a W-2 and withhold taxes once Mendoza received a green card; that simply never happened. After two or three years, Mendoza's pay was raised to $300 per week, without an increase in his duties. The apartment was still furnished to him without cost.
 {¶ 40} Mr. Bishop clearly stated in his testimony that he had the right to supervise the workers on his farm, and had the right to tell them what their duties were. He said that he had supervisory authority, and told workers what needed to be done. In fact, if Mr. Bishop saw his workers doing something incorrectly, he would tell them how to do whatever needed to be done. Workers had specific duties they were supposed to perform, and knew their duties because Mr. Bishop either told them or showed them the duties. Ultimately, Mr. Bishop had the right to terminate the relationship with any worker. All these facts were true of Mendoza, as well as other workers.
 {¶ 41} When Mendoza first arrived at the ranch, his English skills were poor. At that time, Mr. Bishop took Mendoza around and showed him what to do. Bishop told Mendoza to feed the horses twice a day. He also showed Mendoza how to water the horses. This was all done through an interpreter. The interpreter was an older gentleman (Alvino) who spoke both Spanish and English, and worked at the farm.
 {¶ 42} It is true that Mr. Bishop did not tell Mendoza what specific hours to work. However, that is not significant, because it is quite apparent that there was no need to do so, given the type of work as well as the volume. Bishop estimated that Mendoza worked an average of eight hours per day. Mendoza's account was a bit different, as he stated that he worked from 7:00 a.m., until about 6:00 or 7:00 p.m. at night. However, this difference is immaterial. At a minimum, the testimony revealed that Mendoza was employed full-time on a regular basis, for around six years. The difference between this type of situation and a traditional type of independent contract job was evident in Mr. Bishop's own testimony. Specifically, Mr. Bishop stated in this regard that:
 {¶ 43} "Some people just come in for a contract job. `I want you to get these horses ready for a certain sale.' And then when I get them ready and I sell them, they go somewhere else.'"
 {¶ 44} In contrast to that situation, Mendoza worked at least eight hours a day for six years, lived on the premises, and was paid a weekly salary. During that time, Mendoza was responsible for feeding and watering about 100 horses twice a day, as well as cleaning at least 20 stalls. Feedings took place twice a day, once in the morning and once at night, seven days a week. The first feeding was to take place before 8:00 a.m. As Mr. Bishop put it, he did not care if Mendoza began feeding the horses at 6:00 a.m., or at 8:00 a.m. — he just told Mendoza to keep the same space of time in between that feeding and the one later in the day. Mendoza, himself, indicated that the horses needed to be fed the first time before 7:00 a.m. Mendoza was also expected to clean the stalls daily, except on weekends.
 {¶ 45} Bishop indicated that occasionally Mendoza left work early. His comment in this regard was that "Sometimes I allowed that. If he had started early and he got his job done, he could leave early." (Emphasis added.) Bishop also testified that if Mendoza was not there as expected, he would investigate to see what happened or where Mendoza was. Bishop made sure the work got done. The Bishops also supplied all the equipment and materials that Mendoza used in his job, including feed, shovels, wheelbarrows, water, vehicles, and hand tools.
 {¶ 46} Shortly before the accident, Mendoza was working on the farm, giving water to the horses in the corral. Bishop drove his truck into the area and Mendoza went to hook up wagons to the truck. Mendoza had done that many times before. While trying to hook up the wagons, Mendoza was pinned between the truck and the first wagon, and sustained serious injuries.
 {¶ 47} In arguing that Mendoza was not an employee, appellants rely onUnited Ohio Ins. Co. v. Chapek (Jan. 10, 1997), Geauga App. Nos. 96-G-1973 and 96-G-1974, 1997 WL 51424. Specifically, appellants claim there is near identity between the facts in Chapek and those of the present case. We disagree. In Chapek, a plumbing and electrical contractor hired various subcontractors, including an excavator, roofer, and others, to perform work on his own home. Among those hired was a former union carpenter who was experienced in hanging drywall. At the time, the carpenter worked during the day as a car salesman and did not hold himself out to the public as a drywall contractor. Id. at *1. After the carpenter was injured, he brought suit against the contractor. The contractor's insurer then asked the court to declare that the insurer had no duty to defend, based on the fact that the carpenter was the contractor's employee.
 {¶ 48} However, after trying the issues, the trial court found that the carpenter was an independent contractor. The Seventh District Court of Appeals then affirmed. Id. at *3. Although the Seventh District found some conflicts in the evidence, it held that competent, substantial evidence supported the trial court's verdict. Id. Among the facts supporting "independent contractor" status were that the carpenter set his own work hours and schedule, and did not have taxes taken out of his pay. Id. The connection to the present case, presumably, is that Mendoza "set" his own work hours and did not receive a W-2 from Mr. Bishop.
 {¶ 49} Unlike this case, however, Chapek involved a typical independent contractor situation. For example, construction work is often, if not characteristically, performed by contractors. The job was also for a limited time, i.e., while the house was being constructed. Furthermore, the job the carpenter performed was of short or specific duration even within that limited time frame (it was for drywall work only).
 {¶ 50} As an additional point, we have already found the lack of a "set" work schedule irrelevant in the present case. Bishop admittedly did not establish a set report time. Nonetheless, Mendoza did have a daily work schedule. He had to feed the horses between the hours of 6 a.m. and 8 a.m., and at specified intervals thereafter. In fact, on a few occasions when Mendoza had late start times, Mr. Bishop "told him he had to start doing better." Mendoza also had to clean 20 stalls daily. And finally, as we mentioned earlier, Mendoza put in at least eight hours a day on the job, for around six years.
 {¶ 51} We also find no significance in the fact that Mendoza was not given a W-2 form. The Bishops intended to give him a form, and delayed doing so only because Mendoza did not have proper documentation. More important, the undisputed testimony shows that Bishop exerted a great deal of control over Mendoza. For example, other than a one-month period in 1996 or 1997 when Mendoza returned to Mexico to visit his family and get married, Mendoza did not have a day off. When Mendoza asked for a day off to rest or do his laundry, Bishop told him he needed someone there for the horses.
 {¶ 52} Appellants also rely on Harmon v. Schnurmacher (1992),84 Ohio App.3d 207. In Harmon, the Eleventh District Court of Appeals cautioned courts against weighing the evidence in employee/independent contractor situations, noting that:
 {¶ 53} "even where the proper conclusion is that there is no dispute or genuine issue of material fact as to the foregoing indicia [of employment versus independent contractor relationship], a trial court may inadvertently enter the pitfall of engaging in a weighing exercise while analyzing each separate factor on this question in drawing its conclusions of law. The propensity for a weighing analysis on the part of the trier of fact increases when factual elements submitted in a summary judgment exercise take on near fibers of adversarial or oppositional facts. We know of no authority which gives specific, bright-line rules to follow in carrying out this balancing process on this issue in a workers' compensation case. Therefore, such a weighing exercise may be a dangerous step toward exceeding the scope of summary judgment because it leaves room for the court to use wide discretion in construing the undisputed facts." 84 Ohio App. 3d at 212 (parenthetical material added).
 {¶ 54} While the Eleventh District cautioned restraint, it also affirmed the trial court's decision that an individual (a nurse) was an employee rather than an independent contractor. Some of the court's comments in finding employee status are pertinent to the present case. For example, the court stressed that the fact that the nurse "was a reliable employee and did not need anyone to tell her exactly how to do her job does not convert her into an independent contractor." Id. at 213. As proof that Mendoza was an independent contractor, appellants focus on the fact that he performed his work duties largely without continued instruction or interference ence by Mr. Bishop. However, Mendoza's work was not skilled. As Mr. Bishop noted, "anybody knows how to feed a horse if they've been raised on a farm. Just take a scoop of feed from the wheelbarrow and put in it the feed trough." Since Mendoza had worked on his father's farm in Mexico for many years, feeding cattle and horses, he would not have needed much instruction or supervision. Consequently, the lack of constant instruction does not mean that Mendoza was an independent contractor.
 {¶ 55} In Harmon, the Eleventh District also commented that "an independent contractor is generally hired to complete a single job only and does not have a continuing full-time relationship with a single client." Id. We agree with this observation. Again, the fact that Mendoza worked full-time for the Bishops for about six years indicates that he was an employee, not an independent contractor.
 {¶ 56} In this regard, appellants raise the fact that Mendoza did work for the ranch where he had previously worked. This is an insignificant point. The evidence was that this was done only on occasion, after normal work hours at the LB Ranch. An individual's choice to occasionally do work after normal work hours to earn extra money does not make him an independent contractor. The evidence is overwhelming that Mendoza was an LB Ranch employee, i.e., there is insufficient evidence to let reasonable minds differ on this issue. Bostic, 37 Ohio St.3d at 146-47.
 {¶ 57} Having found no genuine issues of material fact that would preclude summary judgment on the issue of Mendoza's status as an employee, we overrule the assignments of error insofar as they pertain to claims for coverage by Lawrence Bishop under the ClaimsCo/Clarendon and Indiana policies. Under the undisputed material facts, Mendoza was an employee and Mr. Bishop was his employer.
 {¶ 58} At the end of their brief, appellants contend that the trial court erred in granting summary judgment against Solid Rock because there is no evidence in the record to indicate that Mendoza was an employee of Solid Rock. Indiana makes no response to this point, other than to say that Solid Rock's status is irrelevant because the policy excludes coverage for injuries to an employee, whether the employer is liable as an employer or in any other capacity. While this may be true, the "employer" referenced by this provision would be Lawrence Bishop, not Solid Rock.
 {¶ 59} As we mentioned earlier, Solid Rock owned the Ford Excursion and was the named insured on the Indiana policy. Mendoza sued Solid Rock on two grounds: (1) respondeat superior (based on claims that Mr. Bishop was acting as a Solid Rock employee or agent at the time of the accident); and (2) negligent entrustment (based on claims that Solid Rock knew Mr. Bishop was an incompetent operator because, among other things, he did not have safety rules in place for hooking wagons to the truck, did not adequately supervise persons who hooked up wagons, and did not have safety devices in place). Notably, Solid Rock was not sued as Mendoza's employer.
 {¶ 60} In a similar situation, the Second District Court of Appeals rejected an employee claims exclusion in a policy and found that liability coverage existed for claims brought against a nonemployer. SeeMotorists Ins. Cos. v. BFI Waste Mgt. (1999), 133 Ohio App.3d 368. In Motorists, a freight hauler (Speedi Delivery Systems) had a contract with BFI Waste Management to transport BFI's trailers to various work sites. A Speedi employee (Stephens) was injured while hauling a trailer, and brought suit against BFI, claiming that BFI was negligent in failing to test and inspect the trailer. Id. at 373. The insurance policy under which the claim was brought was issued to Speedi, and contained an employee claims exclusion that is identical to the one in the policy issued by Indiana. Id. at 374-75. There was admittedly no coverage under the policy for the employee's claims against his employer, Speedi.
 {¶ 61} Although the BFI trailer was considered a "covered auto" under the Motorists insurance policy, Motorists asserted that it also did not have a duty to defend or indemnify BFI (the nonemployer) because of the employee claims exclusion. In rejecting this argument, the Second District first discussed principles of contract interpretation. Among other things, the court noted that "the rule of strict construction is especially applicable where an exception is contained in the policy." Id. at 376. The Second District then focused on the fact that an insurer's duty of coverage is "determined in the first instance by the occurrence of a risk identified in the policy, not by the potential liability of the insured resulting from it." Id. In this context, the court stressed that:
 {¶ 62} "[l]ike the duty of coverage, the existence of an exception to that duty is determined by the occurrence of a risk identified by the exclusion, not by the potential liability of the insured arising from it. Therefore, the fact that the employee exclusion creates an exception to Motorists Mutual's duty to cover Speedi's liability to Stephens does not likewise determine that it has no duty to cover BFI's liability to Stephens. The `severability of interests' clause at Section E of the policy states that `the coverage afforded applies separately to each insured seeking coverage or against whom a claim or suit is brought.' This reflects the fact that multiple insureds whose coverage corresponds may be nevertheless subject to different risks, creating a different duty of coverage with respect to the liability of each and a different exception from that duty with respect to the liability of each." Id.
 {¶ 63} Like the Motorists' policy, Indiana's policy contains a severability of interests clause. Indiana's clause provides that:
 {¶ 64} "`Insured' means any person or organization qualifying as an insured in the Who is an Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or suit is brought." Indiana Business Auto Coverage Form, Section V(F).
 {¶ 65} After discussing severability of interests, the Second District then considered whether the employee exclusion in the Motorists policy precluded coverage of the nonemployer's liability. As we mentioned, the court found that the exclusion did not prevent coverage for the non-employer. In this regard, the Second District observed that:
 {¶ 66} "[t]he exclusion applies to bodily injury to `[a]n employee ofthe "insured" arising out of and in the course of employment by the
"insured."' The prepositional phrase `of the insured' modifies the word `employee' to refer to one who is employed by the insured. `The' is an indefinite article that precedes the noun `insured' to refer to an insured whose employee suffers bodily injury `arising out and in the course of employment.' The exception is thus limited to claims for bodily injury made by an employee against the insured who employs him. It does not apply to the same employee's claim against another insured by whom he is not employed." Id. at 377 (emphasis sic).
 {¶ 67} We agree with the reasoning of the Second District Court of Appeals. Consequently, we find that Indiana's exclusion of coverage for claims brought by Mendoza against his employer (Bishop) does not apply to Mendoza's claims against another insured (Solid Rock), that did not employ Mendoza. Of particular interest in the present case are the following observations of the Second District about the employee exclusion:
 {¶ 68} "[o]ur view that the exception is limited to coverage of claims made against an insured by its own employee is consistent with the definition of the bodily injury involved. Injuries `arising out of and in the course of employment' are covered by workers' compensation. R.C. 4321.01(C). An employer who subscribes for that coverage is exempt from civil liability to the employee for the covered injury. Section 35, Article II, Ohio Constitution. Because the employer has no interest to insure with respect to such liability, a general policy of liability insurance will reasonably exclude coverage of it. However, the exemption from civil liability does not extend to anyone other than the employer. Therefore, an employee exclusion in the policy need not apply to any civil liability that anyone else may have to the same injured employee." Id.
 {¶ 69} Because the trial court failed to consider the coverage afforded separately to Solid Rock, the court erred in granting summary judgment in Indiana's favor on the issue of whether Indiana had a duty to defend and indemnify Solid Rock.
 {¶ 70} Using the same analysis, we further find that factual issues exist regarding coverage for the claims against Darlene Bishop. As we mentioned, Mrs. Bishop is a named insured on the ClaimsCo/Clarendon policy and is afforded liability coverage for all sums for which she is liable due to bodily injury caused by an occurrence. Under "exclusions," the policy provides that the personal liability coverage does not apply to "`bodily injury' to a `farm employee' of an `insured' if it occurs in the course of employment by the `insured.'" Like the Motorists and Indiana policies, the ClaimsCo/Clarendon policy has a severability clause, which states, after defining who are "insured" parties, that "each of the above is a separate `insured,' but this does not increase our `limit.'" ClaimsCo/Clarendon Personal Liability Coverage, Definitions, Section 9.
 {¶ 71} The facts indicate that Mendoza was a "farm employee," but the facts are unclear with regard to whether Mendoza's injury occurred in the course of employment by "the insured," Mrs. Bishop. While the factual disputes are created by differences in the testimony of the Bishops and by the lack of a record on some points, that does not mean summary judgment was proper. Mr. Bishop's testimony seems to indicate that Mrs. Bishop helped run the business, but Mrs. Bishop denied being involved. She stated that she did not work outside the home, and had no role whatsoever with the ranching business, other than working in the office, around once a week for a few hours, paying bills. She also said she did not hire or supervise employees. Further, Mr. Bishop's testimony was contradictory concerning whether Mrs. Bishop had any ownership interest in the ranch. The ranch was a sole proprietorship, in the name of "Lawrence Bishop."
 {¶ 72} The amended complaint alleges that Mrs. Bishop was negligent in failing to train Mendoza on how to properly hook up a wagon and in failing to install safety devices or personnel to guard Mendoza from being crushed between two moving vehicles. These claims were made in the context of Mrs. Bishop's role as an alleged employer and were also asserted alternatively, in the event that Mrs. Bishop was not considered Mendoza's employer. We express no view on the validity of these claims. We simply note that in view of the factual disputes and lack of information on Mrs. Bishop's involvement in the business, summary judgment in favor of ClaimsCo/Clarendon on this point was improper.
 {¶ 73} Accordingly, the three assignments of error are sustained in part, but only as to the summary judgment granted in Indiana's favor against Solid Rock, and the summary judgment granted in Indiana's favor against Darlene Bishop. The trial court did not err in granting summary judgment in favor of ClaimsCo/Clarendon and Indiana on the duty to defend and indemnify Lawrence Bishop.
 {¶ 74} Based on the preceding discussion, the judgment of the trial court is affirmed in part, is reversed in part, and is remanded for further proceedings.
Walsh, P.J., and Hendrickson, J., concur.
Brogan, J., of the Second Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 5(A)(3), Article IV of the Ohio Constitution.
Hendrickson, J., Retired Judge of the Twelfth Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 6(C), Article IV of the Ohio Constitution.