[Cite as *Cornett v. Admr., Ohio Bur. of Workers' Comp.*, 2014-Ohio-3559.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| CARRIE A. CORNETT, | : | |
| Appellant, | : | CASE NO. CA2014-01-006 |
| | : | O P I N I O N<br>8/18/2014 |
| - vs - | : | |
| | : | |
| ADMINISTRATOR, OHIO BUREAU OF<br>WORKERS' COMPENSATION, et al., | : | |
| | : | |
| Appellees. | : | |
| | : | |

CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 12CV81395

Durden Law, L.P.A., LLC., Sean Brinkman and Aaron G. Durden, 10 West Monument Avenue, Dayton, Ohio 45402, for appellant

James M. Carroll, 1600 Carew Tower, 441 Vine Street, Cincinnati, Ohio 45202, for appellee, Administrator, Ohio Bureau of Workers' Compensation

Martin, Folino, Harmon & Stachler, John H. Stachler and Matthew T. Tipton, 214 West Monument Avenue, P.O. Box 10068, Dayton, Ohio 45402, for appellee, Schumaker Stables

**M. POWELL, J.**

{¶ 1} Appellant, Carrie Cornett, appeals a decision of the Warren County Court of Common Pleas upholding her denial of workers' compensation benefits.

{¶ 2} In June 2009, Cornett answered an ad on Craigslist for a "horse barn for rent."

The ad was placed by Ron Schumaker, acting for Red Stone Group dba Schumaker Stables. Cornett and Schumaker entered into an agreement whereby Cornett would board horses on the property and pay a portion of the boarding fee to Schumaker as rent for the stables. This agreement was not reduced to writing. Cornett contracted directly with horse owners and charged them $250 per month. Cornett collected payment directly from her boarders and deposited those payments into her personal bank account. Cornett paid Schumaker $100 per occupied stall per month.

{¶ 3} Cornett personally cared for her customers' horses, which included feeding and watering the horses, and cleaning the stalls. Cornett was required to purchase her hay from Schumaker (the hay was grown and baled by a Red Stone Group's subsidiary) but otherwise purchased any other necessary supplies (such as sawdust and feed) from sources of her choosing. Schumaker required Cornett to clean and weed the barn as a fire safety and maintenance issue. He also expected her to be present at the barn when the farrier or veterinarian would come. Cornett cleaned the hay loft, helped put hay in the loft, and was occasionally asked to help with some maintenance tasks and repairs. Cornett used the tools found on the property to clean and maintain the barn and stalls (according to Schumaker, the tools were likely left on the property by a previous tenant). Cornett worked seven days a week, seven to eight hours per day (about four hours in the morning and three hours in the afternoon).

{¶ 4} On October 29, 2009, Cornett was working at the barn when she heard an "awful noise." As she went outside to investigate, she was trampled and struck unconscious by the horses. As a result of the incident, Cornett suffered severe injuries to her face, skull, and right leg.

{¶ 5} Cornett applied for, but was denied, workers' compensation benefits by the Bureau of Workers' Compensation (BWC) on the ground she was not an employee of

Schumaker Stables. In January 2012, Cornett appealed the denial of workers' compensation benefits to the common pleas court. BWC and Schumaker Stables jointly moved for summary judgment. The common pleas court denied the motion for summary judgment and a hearing was held before a magistrate. Both Schumaker and Cornett testified at the hearing.

{¶ 6} On August 29, 2013, the magistrate upheld the denial of workers' compensation benefits on the ground that Cornett was never an employee of Schumaker Stables as there was no contract for hire between them. Specifically, the magistrate found that:

> A salient feature of an "employee" as defined in R.C. 4123.01[A][1](b), is that a contract for hire exist between the claimant and the putative employer. Without a contract for hire, there is no employment relationship. In this case, Schumaker Stables provided [Cornett] with the right to occupy and conduct business at the barn, but the consideration for this arrangement was not [Cornett's] performing horse care services there, but her monthly payment of rent. The only evidence led [sic] at trial demonstrated that Schumaker Stables provided no wages, no salary, no health insurance, no free hay, no paid leave, no food, no board, nor pension, nor any other benefit whatever in exchange for [Cornett's] caring for horses at the facility. She rented the stables from Schumaker, and this arrangement [did not create] an employer/employee relationship[.]

{¶ 7} Cornett filed objections to the magistrate's decision. On December 20, 2013, the common pleas court overruled Cornett's objections and adopted the magistrate's decision on the grounds that:

> There is no evidence in the record that Schumaker Stables hired Cornett to work as an employee. There was no contract for hire, either written or verbally. Furthermore, Schumaker Stables did not pay Cornett a salary or any type of wages, or provide any expense reimbursement. Schumaker Stables did not withhold any taxes, provide Cornett with a W-2 or 1099, or offer retirement savings or contributions. Cornett did not earn any vacation or sick time, but was free to come and go of her own choosing and volition. Schumaker Stables provided Cornett no room and board, or any other kind of payment for her services. The evidence establishes that Schumaker Stables and Cornett were engaged in a landlord-tenant relationship, not an employer-

employee relationship.

{¶ 8} Cornett appeals, raising two assignments of error.

{¶ 9} Assignment of Error No. 1:

{¶ 10} THE TRIAL COURT ERRED IN RULING THAT NO EMPLOYER-EMPLOYEE RELATIONSHIP EXISTED BETWEEN CARRIE CORNETT AND SCHUMAKER STABLES.

{¶ 11} Cornett argues the common pleas court erred in finding she was not an employee of Schumaker Stables for workers' compensation purposes. Cornett asserts there was an implied contract for hire as evidenced by Schumaker's control over her activities, which included Schumaker instructing Cornett to clean and weed the barn and help with maintenance tasks and repairs, requiring her to be on the property when the farrier or veterinarian was on the property, requiring her to buy hay from him, and allowing her to take time off but wanting to know when she would leave and return.

{¶ 12} A trial court reviews an appeal regarding a claimant's right to participate in the workers' compensation fund de novo. *Oswald v. Connor*, 16 Ohio St.3d 38, 42 (1985); *Steele v. Crawford Machine, Inc.*, 184 Ohio App.3d 45, 2009-Ohio-2306, ¶ 11 (3d Dist.). By contrast, an appellate court's review of the common pleas court's decision is limited: "If the evidence before [the trial] court is sufficient to support the result reached, [an appellate] court will not substitute its judgment." *Oswald* at *id.*; *Steele* at ¶ 12.

{¶ 13} R.C. 4123.54 provides that any employee who is injured or contracts an occupational disease in the course of employment may participate in the workers' compensation fund. "Employee" is defined in R.C. 4123.01(A)(1). The trial court held, and we agree, that the only definition of employee applicable to Cornett under R.C. 4123.01(A)(1) is as follows:

> Every person in the service of any person, firm, or private corporation, including any public service corporation, that (i) employs one or more persons regularly in the same business or

- 4 -

in or about the same establishment under any contract of hire, express or implied, oral or written, * * * or (ii) is bound by any such contract of hire or by any other written contract, to pay into the state insurance fund the premiums provided by this chapter.

R.C. 4123.01(A)(1)(b).

{¶ 14} When determining whether a person is an employee, the proper focus is whether a contract of hire, either express or implied, oral or written, exists between the individual and the employer. *See Republic–Franklin Ins. Co. v. Amherst*, 50 Ohio St.3d 212, 215 (1990); *Margello v. Parachute & Special Advocates for Children*, 12th Dist. Butler No. CA2012-08-168, 2013-Ohio-1106, ¶ 16. A contract of hire exists where there is a "price, reward or compensation paid for personal service or for labor." *Coviello v. Indus. Comm.*, 129 Ohio St. 589 (1935), paragraph four of the syllabus. "It is impossible to have a 'contract of hire' without an obligation that the person denominated the employer pay the person employed." *Id.* at 592-593. Absent an obligation by an employer to pay the person employed, no contract of hire can exist. *Doyle v. Mayfield*, 48 Ohio App.3d 113, 114-115 (12th Dist.1988).

{¶ 15} Cornett relies on a 2005 decision from this court and a 1999 decision from the Tenth Appellate District to support her assertion there was an implied contract for hire. *See Mendoza v. Bishop*, 12th Dist. Butler No. CA2004-04-080, 2005-Ohio-238; *Anderson v. Linkscorp, Inc.*, 10th Dist. Franklin No. 98AP-454, 1999 WL 173994 (Mar. 16, 1999).

{¶ 16} The *Mendoza* decision involved a farm worker who worked on a horse farm at least eight hours a day for six years (his job was to feed and water the horses twice daily and to clean the stalls every day except on weekends), lived on the premises in a rent-free apartment, was paid a weekly salary, and never received a W-2 form because he never obtained a green card. This court held that the worker was an employee of the ranch owner, and not an independent contractor, for purposes of the ranch owner's insurance policies. *Id.*

at ¶ 44, 56-57.

{¶ 17} The *Anderson* decision involved a retiree who performed various duties as a "ranger" on a golf course in exchange for unlimited free golf, free golf cart use, and free or discounted food. The Tenth Appellate District held that a person receiving compensation in the form of free services under an express or implied contract for hire was not a volunteer, but an employee for purposes of workers' compensation. *Anderson*, 1999 WL 173994 at *3.

{¶ 18} In the case at bar, the evidence shows that Cornett never received a salary or wages from Schumaker Stables or compensation in the form of free services or free lodging for her work on the barn. Rather, Cornett directly contracted with horse owners, charged them $250 and was paid directly by her boarders, and deposited that money into her personal bank account. In turn, she paid Schumaker $100 per occupied stall per month to rent stalls for the horses she boarded. The evidence also shows that Schumaker was one of Cornett's boarders and that he paid her by giving her a credit on her monthly rent obligation. Further, as the magistrate and the trial court properly found, Schumaker Stables did not withhold any taxes, provide Cornett with a W-2 or 1099 tax form, or offer retirement savings or contributions. Schumaker Stables also did not provide her with health insurance, sick time or paid leave, or any other employment benefits.

{¶ 19} The fact she was required to buy hay from Schumaker, clean and weed the barn as a fire safety and maintenance issue, be present when the farrier or veterinarian came to the barn, and was occasionally asked to help with some maintenance tasks and repairs is not consistent solely with an employer-employee relationship. Such activities are also consistent with a landlord-tenant relationship. Further, the ad on Craigslist was for a "horse barn for rent," and not to hire a barn manager. There is no evidence of a contract for hire, express or implied, oral or written.

{¶ 20} Upon reviewing the evidence presented at the hearing before the magistrate,

we find the evidence supports the common pleas court's finding that Cornett was not an in an employer-employee relationship with Schumaker Stables, and does not fall within the definition of "employee" for purposes of workers' compensation. The denial of workers' compensation benefits to Cornett is accordingly upheld. Cornett's first assignment of error is overruled.

{¶ 21} Assignment of Error No. 2:

{¶ 22} THE TRIAL COURT ERRED IN HOLDING THAT CARRIE CORNETT WAS NOT ENTITLED TO PARTICIPATE IN THE OHIO WORKERS' COMPENSATION FUND FOR HER INJURIES.

{¶ 23} Cornett argues she is entitled to participate in the workers' compensation fund because she was an employee of Schumaker Stables and suffered an injury while in the course of employment. In light of our holding under the first assignment of error, Cornett's second assignment of error is overruled. *Margello*, 2013-Ohio-1106 at ¶ 23 (the claimant having failed to establish either her status as an employee or an employer-employee relationship, no further analysis is required with regard to the injury and participation in the workers' compensation fund).

{¶ 24} Judgment affirmed.

S. POWELL, P.J., and PIPER, J., concur.