HARMON, Appellee,

v.

SCHNURMACHER, Appellant;

Mihm, Admr., et al., Appellees.

[Cite as *Harmon v. Schnurmacher* (1992), 84 Ohio App.3d 207.]

Court of Appeals of Ohio,
Portage County.

No. 92-P-0040.

Decided Dec. 14, 1992.

208

*Janet McCamley,* for appellee.

*Irwin J. Dinn,* for appellant.

*Lee Fisher,* Attorney General, and *James P. Mancino,* Assistant Attorney General, for appellees Patrick G. Mihm, Administrator, Bureau of Workers' Compensation, and Industrial Commission of Ohio.

FORD, Presiding Judge.

This appeal arises as a result of a final administrative decision of the Ohio Industrial Commission, which found that appellee, Savannah Harmon, was injured in the course and scope of her employment with appellant, Marcelle Schnurmacher. Pursuant to R.C. 4123.519, appellant appealed to the Portage County Common Pleas Court. After both parties submitted cross-motions for summary judgment, the court determined that Harmon was an employee of appellant, not an independent contractor, and was entitled to participate in the Workers' Compensation fund. Appellant timely appeals from the trial court's opinion and order. Pursuant to App.R. 9(D), the parties filed an agreed statement in lieu of a transcript. The agreed facts are as follows:

Harmon began her employment as a nurse's aide in 1959 after a six-week training course at St. Alexsis Hospital. In the spring of 1986, she was engaged by appellant and her late husband to assist in his care at their apartment. When Mr. Schnurmacher died in 1987, Harmon continued to perform, as needed, housekeeping and nursing services for appellant.

As appellant's mental and physical condition deteriorated, Harmon was hired by appellant's brother and attorney-in-fact, Lawrence Korach, to care for appellant while hospitalized. She was paid $7 per hour by Korach from appellant's account.

After being diagnosed with Alzheimer's disease and admitted to the Anna Maria Nursing Home in Aurora, Ohio, appellant could no longer communicate her needs and wishes to Harmon. Thus, Korach hired Harmon to provide nursing care for appellant at the nursing home. Though at all times appellant's brother retained the power to direct Harmon and set her hours of service and the nature of her services, he relied upon Harmon to determine the exact nature of attendance because he was not an expert in the details of nursing care.

Upon hiring Harmon, Korach asked her to provide the same quality care that she provided for appellant's husband, and trusted implicitly that she would do so. His main concern was that his sister receive better care than the nursing home provided. Per Korach's request, Harmon worked at least eight hours each day with a break for lunch.

Harmon called Korach each day on the telephone to report appellant's status. If Harmon needed to take a day off, Korach had given her the authority to suggest a replacement because, again, he was not knowledgeable in the realm of nursing care selection. Any replacements were paid directly by Korach by check drawn on his sister's account. In addition, Korach provided Harmon with a week's vacation pay and with additional payments at Christmas time.

It was in the course of these services, on September 30, 1988, while pushing appellant in a wheelchair, that Harmon injured her back. At the time of this injury, appellant was not a participating employer in the Ohio workers' compensation insurance fund. Harmon subsequently filed a claim for direct benefits under the Ohio workers' compensation statutes, claiming to be an employee of appellant.

The only issue before the trial court was whether under the facts surrounding the performance of services by Harmon for appellant, Harmon was to be regarded as an employee entitled to participate in the Ohio workers' compensation insurance fund, or an independent contractor who is not entitled to so participate.

Appellant assigns the following as error:

"The trial court erred in finding Plaintiff–Appellee, Savannah Harmon, as a matter of law, to be the employee of Defendant–Appellant, Marcelle Schnurmacher, rather than an independent contractor."

Civ.R. 56 authorizes summary judgment and establishes that it may be granted only when, after construing the evidence most strongly in favor of the nonmoving party, reasonable minds could come to but one conclusion, and that conclusion is adverse to the nonmoving party. "Whether someone is an employee or an independent contractor is ordinarily an issue to be decided by the trier of fact." *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 145–146, 524 N.E.2d 881, 883. However, " * * * where the evidence is not in conflict or the facts are admitted, the question of whether a person is an employee or an independent contractor is a matter of law to be decided by the court." *Id.* at 146, 524 N.E.2d at 884, citing *Schikling v. Post* (1927), 115 Ohio St. 589, 155 N.E. 143.

■ The parties agree that one of the controlling cases on this subject is *Indus. Comm. v. Laird* (1933), 126 Ohio St. 617, 186 N.E. 718. *Laird* stands for the important proposition that "[t]he vital test, in determining whether a person employed to do certain work is an independent contractor or a mere servant, is the *control* over the work which is exercised by the employer. * * * The ultimate question is *not* whether the employer actually exercises such control, but whether he has the right to control. * * * " *Id.* at 619, 186 N.E. at 719.

Hence, the "right to control" is agreeably the key factor in making the determination of whether an individual is an independent contractor or an employee. Therefore, in determining whether summary judgment was proper in this case, the trial court was required to merely compile, not weigh, the material facts and determine whether reasonable minds could only come to the conclusion that appellant was appellee's employer.

Certainly, as previously established, the "right to control" seems to be the key, tie-breaking factor in making this determination. However, the law is also clear that *all* indicia of the employment relationship in a given case must be assessed together as a whole as well. *Gillum v. Indus. Comm.* (1943), 141 Ohio St. 373, 25 O.O. 531, 48 N.E.2d 234. Thus, we are mindful that absolute standards are not applicable when addressing this particular issue, and that case law has developed generally recognized criteria to assist in determining whether someone is an independent contractor or an employee *as a matter of law.*

As we will more fully discuss in our forthcoming analysis, we agree that there was no dispute as to the *material* facts bearing on the issue of whether Harmon was an employee or an independent contractor. Accordingly, we feel constrained by the controlling case law to conclude that the question became a matter of law to be decided by the trial court in a summary judgment exercise. However, as stated, we come to such conclusion with strong reservations and cautious regard for the fine line between making findings of fact and drawing conclusions of law

in this particular realm. Although *Bostic* stands for the proposition that in the face of undisputed facts, summary judgment is appropriate, it ignored the possibility that such "undisputed" facts may still be adversarial in nature, thus posing a genuine issue of material fact.

■ For example, in addition to the "right to control," some other indicia of the employment versus independent contractor relationship are (1) whether the one employed is engaged in a distinct occupation or business; (2) whether the work is done by a specialist, requiring a particular skill; (3) whether the worker or the employer supplies the place and requisite instrumentalities; (4) the length of time for which the person is employed; (5) the method of payment, whether by the time or by the job; and (6) whether the work is a part of the regular business of the employer. See *Gillum, supra,* 141 Ohio St. at 381–382, 25 O.O. at 535, 48 N.E.2d at 237–238.

■ Thus, even where the proper conclusion is that there is no dispute or genuine issue of material fact as to the foregoing indicia, a trial court may inadvertently enter the pitfall of engaging in a weighing exercise while analyzing each separate factor on this question in drawing its conclusions of law. The propensity for a weighing analysis on the part of the trier of fact increases when factual elements submitted in a summary judgment exercise take on near fibers of adversarial or oppositional facts. We know of no authority which gives specific, bright-line rules to follow in carrying out this balancing process on this issue in a workers' compensation case. Therefore, such a weighing exercise may be a dangerous step toward exceeding the scope of summary judgment because it leaves room for the court to use wide discretion in construing the undisputed facts.

■ Turning now to the instant case, Korach, as an agent for his sister via durable power of attorney, never relinquished the right to control Harmon's work, though he apparently rarely exercised such right. The factors to be considered in determining who has the ultimate right to control include, but are certainly not limited to, "such indicia as who controls the details and quality of the work; who controls the hours worked; who selects the materials, tools and personnel used; * * * the length of employment; the type of business; the method of payment; and any pertinent agreement or contracts." *Bostic, supra,* 37 Ohio St.3d at 146, 524 N.E.2d at 884. As to the factor of "who controls the details and quality of work," we conclude that it is inapplicable to this case because we cannot penalize Harmon for a factor over which she has no control. In other words, there is an inherent disparity between the knowledge and ability

of the parties in the realm of nursing care. Korach hired appellee for the very reason that he was not capable of caring for appellant. Thus, he could not execute the details of appellee's work.

We do, however, conclude that as to the remaining determinants of the "right to control," reasonable minds could only reach the conclusion that appellant was appellee's employer.

Korach stated in his deposition that he was deeply concerned for the care administered to his sister, specifically that it exceed the level of care administered by the nursing home. Thus, if he desired Harmon to either carry out additional tasks, or was not satisfied with the manner in which appellant was being bathed, lifted out of bed, pushed in her wheelchair, or otherwise cared for etc., he would have directed Harmon according to his wishes. He also admittedly retained the right to discharge Harmon if necessary. It just so happened that her performance consistently met his expectations.

It is the retention of this power to direct, or "right to control" which created the employer-employee relationship between appellant and appellee. Again, the fact that Harmon was a reliable employee and did not need anyone to tell her exactly how to do her job does not convert her into an independent contractor. The other undisputed facts of this case firmly establish that reasonable minds could draw no other conclusion than that Harmon was an employee of appellant. First, since 1986, Harmon has devoted her full-time or entire time to care for appellant. Harmon was not in business for herself whereby she was running a nursing care agency or providing a service to the general public on her own terms at the same time that she was caring for appellant. An independent contractor, on the other hand, holds his or her services out to the general public regardless of whether he or she is already engaged to work for someone else.

Second, an independent contractor can work for more than one person at a time. Appellant, however, was the only person for whom Harmon worked. This conclusion is bolstered by the fact that Harmon reported to Korach alone on a daily basis, and not to the nursing home or to another agency.

Third, as Korach stated in his deposition, the length of employment in Harmon's case is indefinite, whereas an independent contractor is generally hired to complete a single job only and does not have a continuing, full-time relationship with a single client.

Fourth, it is clear that Korach, and not the aides, set the hours of employment. He wanted to have his sister cared for seven days a week from 8:00 a.m. to 8:00 p.m.

Fifth, Korach paid Harmon and any other aides directly from his sister's account on an hourly basis. Independent contractors, however, are usually paid

by the job. In addition, an independent contractor would not receive fringe benefits. However, Harmon received one week's vacation pay per year, and double pay on holidays.

Last, Harmon furnished no equipment at the nursing home. If any necessities were needed, Harmon would purchase them and be reimbursed by Korach from appellant's funds. An independent contractor would have to provide his or her own equipment and materials. Also, Korach directed Harmon to care for appellant at the nursing home. Thus, Korach was the one "providing" the place of employment, further indicating his control over Harmon's activities.

While one could contend that the undisputed facts in the case at bar could somehow be construed to favor either of the parties, we find no reason to upset the judgment of the trial court. Taken together, the facts in the case prove that reasonable minds could only come to the conclusion that Harmon was an employee of appellant. Even when viewed in a light most favorable to appellant, there is no reason to adopt appellant's contention that Harmon was an independent contractor. Accordingly, we conclude that the trial court correctly ruled that, as a matter of law, Harmon was an employee of appellant.

Based on the foregoing, the judgment of the trial court is affirmed.

*Judgment affirmed.*

CHRISTLEY and JOSEPH E. MAHONEY, JJ., concur.