Appellant Cynthia Walker, formerly known as Cynthia Ramseur, timely appeals the decision of the Summit County Court of Common Pleas granting summary judgment to appellees John A. Lahoski[1], the Ohio Industrial Commission and the Bureau of Workers' Compensation, thus denying her Workers' Compensation claim. We reverse.
 I.
In July 1995, Cynthia Walker contracted with Genny's Home Health Care ("Genny's") to find her employment as a home health care worker. Genny's role was to place home health care workers with customers in need of assistance in their homes. Sometime in the summer of 1995, Ben Lahoski, now deceased, engaged Genny's to provide services to his wife Ann in their home. Mr. Lahoski paid Genny's for twenty-four hour live-in care. Ms. Walker and another worker were assigned to work for the Lahoski's, working either forty-eight or seventy-two hour shifts, with two full days off between shifts. On September 2, 1995, Ms. Walker was mopping the floor in the Lahoski home, when she inadvertently struck a cast iron clock with her mop handle. The clock fell off the wall and struck her on the head, resulting in injuries diagnosed as sprain of the neck, lumbrosacral and lumbar region, and contusions of the face, scalp and neck.
After her injury, Ms. Walker filed a claim with the Ohio Bureau of Workers' Compensation, naming Ben and Ann Lahoski as her employers. Her claim was denied on the basis that Ms. Walker was not an employee of the named employers. She appealed to the Summit County Court of Common Pleas, pursuant to R.C. 4123.512(A). The court granted summary judgment for the defendants, and Ms. Walker filed the instant appeal. She makes one assignment of error, namely that the trial court erred in granting summary judgment to the defendants, as there was a genuine issue of material fact as to Ms. Walker's status as an employee.
 II.
To prevail in her workers' compensation claim, Ms. Walker would have to establish that she was an employee of Ben and Ann Lahoski at the time that her injury occurred. The trial court's denial of her claim is based on its finding that she was not their employee, but an independent contractor.
For purposes of workers' compensation coverage in Ohio, R.C.4123.01(A)(1)(b) defines an employee as,
 [Any] person in the service of any person, firm, or private corporation, including any public service corporation that (i) employs one or more persons regularly in the same business or in or about the same establishment under any contract of hire, express or implied, oral or written, including aliens and minors, household workers who earn one hundred sixty dollars or more in cash in any calendar quarter from a single household * * *.
The definition of "employer" in R.C. 4123.01(B)(2) mirrors this definition, then goes on to say,"[a]ll such employers are subject to this chapter." Pertinent parts of the statute require employers to pay workers' compensation premiums for their employees or to be liable for coverage of the claim. R.C. 2123.35; R.C. 2123.75.
Appellees in this matter argue that Walker was an independent contractor. Thus, even though the statutory definition may appear to apply, in reality it does not. In support of their position they point out that there was no contract between Walker and the Lahoski's, that the Lahoski's did not pay Walker but paid the agency, and that Walker's contract with the agency specifically stated that she was an independent contractor.
Courts have distinguished an employee from an independent contractor by resolving two key questions. The first is whether the putative "employer" controls the "manner or means" by which the work is done or if the "employer" is interested only in the results to be achieved. In the first case, the worker would be an employee while in the second case the worker would be an independent contractor.
The second question is how the worker is paid. If the worker is paid on an hourly basis, this tends to indicate that the worker was an employee, while payment by the job tends to indicate that the worker was an independent contractor. Historically, courts have also looked at whether the "employer" paid the worker directly or paid a third party for the services. Over time, as more workers have been employed via agencies, the second factor has all but disappeared.[2] Thus, in 1935 the Supreme Court held that "[i]t is impossible to have a `contract for hire' without an obligation that the person denominated the employer pay the person employed." Coviello v. Indus. Comm. (1935), 129 Ohio St. 589, at paragraph five of the syllabus. But three decades later, the Court in Daniels v. MacGregor (1965), 2 Ohio St.2d 89
held that
 [w]here an employer [agency] employs an employee with the understanding that the employee is to be paid only by the employer * * * to work for a customer of the employer and where it is understood that that customer is to have the right to control the manner or means of performing the work, such employee in doing that work is an employee of the customer within the meaning of the Workmen's Compensation Act * * *.
Id., at the syllabus. See also Foran v. Fisher Foods, Inc. (1985), 17 Ohio St.3d 193. Thus, the overriding consideration for the fact-finder in these cases is who has the right to control the manner or means of the work performed. See Indus. Comm. v. Laird (1933), 126 Ohio St. 617, 619; Gillum v. Indus. Comm. (1943),141 Ohio St. 373, paragraph two of the syllabus; Bostic v. Connor (1988), 37 Ohio St.3d 144, paragraph one of the syllabus.
 III.
Before a trial court can grant summary judgment, the moving party bears the burden to present evidence that shows that there is no genuine issue of material fact, or that, given the evidence presented, reasonable minds can come to but one conclusion which is favorable to the moving party, and that he is entitled to judgment as a matter of law. See Valhila v. Hall (1997), 77 Ohio St.3d 421,429-430. Only if the moving party meets this burden does the burden shift to the non-moving party to produce evidence that there remains some genuine issue of material fact. Id. at 430.
A reviewing court must examine the record de novo to determine if the moving party has met the burden, and if so, whether the non-moving party has failed to meet the responding burden. "[W]here the evidence is not in conflict or the facts are admitted, the question of whether a person is an employee or an independent contractor is a matter of law to be decided by the court." Bostic v. Connor, 37 Ohio St.3d at 146, citing Schickling v. Post Publishing Co. (1927), 115 Ohio St. 589, syllabus.
In the instant case, Walker signed a contract in which she acknowledged that she was an independent contractor relative to Genny's and that she would be an independent contractor relative to the customer, absent agreement by the customer that she could be considered the customer's employee. However, such a contract provision is not necessarily controlling. The trial court must look to the substance of the relationship, not merely to a label attached to the relationship.
The contract between Walker and Genny's offers limited guidance as to the resolution to the issues in this case. The contract stated that as to Genny's Walker would not be considered an employee or agent and she specifically acknowledged that she would not be entitled to workers' compensation or unemployment compensation through Genny's.[3] She agreed to "classify myself as an independent contractor or an employee of the client where I am placed, agreeable with them."
By way of explaining that classification, the contract states "I will be free from direction and control by the agency in the provision of services, which direction and control shall come from the client I serve, the services I provide whether licensed or certified by the state of Ohio or not, are customarily provided independently." In addition to this rather contradictory[4]
description of the relationship between Genny, the worker, and the client, other documents provided by Genny's indicate various levels of control by the agency, the client, and the worker.[5]
While appellees point out the portion of Walker's contract with Genny's that said she was an "independent contractor" with regard to the agency, they do not address the provision which permits Walker to be an employee of the customer, with the customer's agreement. They point out that there was no contract between Ben Lahoski and Walker. However, this is not sufficient to reach a substantive determination that there was not an employer/employee relationship by way of implicit contract, or by virtue of two contracts (Walker/Genny's and Genny's/Lahoski).[6]
Appellees also assert that when Walker and her co-worker Peggy J. Seifert began to work for Ben Lahoski, Mr. Lahoski only briefly gave the women a tour of the house, then left it to them to perform their work as they saw fit. This was the statement of Ms. Seifert in her affidavit. However, Cynthia Walker has testified otherwise, asserting that Ben Lahoski was actively involved in directing her work for Mrs. Lahoski. In considering whether summary judgment was appropriate in this case, we must resolve the conflict in testimony in favor of the non-moving party, Ms. Walker. Furthermore, the factual determination to be made in this case is who had the right to exercise control over the manner or means of the work performed.
The Portage County Court of Appeals dealt with facts similar to the instant case in Harmon v. Schnurmacher (1992), 84 Ohio App.3d 207. There, a nurse's aide with twenty years of home health care experience was hired to care for an elderly couple in their home. Eventually, the husband died and the wife was put into a nursing home. However, the wife's brother, who was her guardian, hired the aide to continue to care for his sister in the nursing home because he did not trust the nursing home staff to adequately care for his sister. It was undisputed that the guardian did not actually exercise day to day control over the manner or means of the work that the aide performed. Nonetheless, the court affirmed summary judgment in favor of the nurse's aide in her workers' compensation claim. The court reasoned:
 The parties agree that one of the controlling cases on this subject is Indus. Comm. v. Laird (1933), 126 Ohio St. 617, 186 N.E. 718. Laird stands for the important proposition that "[t]he vital test, in determining whether a person employed to do certain work is an independent contractor or a mere servant, is the control over the work which is exercised by the employer. * * * The ultimate question is not whether the employer actually exercises such control, but whether he has the right to control. * * *" Id. at 619, 186 N.E. at 719.
 Hence, the "right to control" is agreeably [sic] the key factor in making the determination of whether an individual is an independent contractor or an employee. Therefore, in determining whether summary judgment was proper in this case, the trial court was required to merely compile, not weigh, the material facts and determine whether reasonable minds could only come to the conclusion that appellant was appellee's employer.
(Alterations in the original.) Id., at 211. The court pointed out not only areas in which the employer actually exercised control, such as the hours of work, but also areas where he rarely did but could have exercised control, such as the way the patient was bathed, fed, etc.
In the instant case, appellees merely assert that "it is clear that Ben Lahoski did not reserve the right to control the manner or means of Appellant's work[.]" In point of fact, it is not clear that Mr. Lahoski did not exercise such control. The statements of the two workers conflict on this point. Furthermore, even if Ben Lahoski did not exercise that right to control, there is sufficient evidence to indicate that he had the right to exercise that control.
The record below contains disputed facts and several indicia of employee status, such as hourly payment, control of hours worked, and control over the manner or means the work was performed. Appellees failed to meet their burden to show that there was no genuine issue of material fact, that reasonable minds could come to but one conclusion, that the conclusion would be favorable to the appellees, and that they were entitled to judgment as a matter of law. Thus, the trial court erred in granting summary judgment in favor of the defendants.
 Appellant's assignment of error is well taken, and the judgment of the trial court is reversed and the cause is remanded for further action in accordance with this decision.
Judgment reversed and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Summit County Court of Common Pleas to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellees.
Exceptions.
___________________________ WILLIAM R. BAIRD
FOR THE COURT
CARR, J.
WHITMORE, J.
CONCUR
[1] The initial defendants were Ben and Ann Lahoski, as well as the state agencies. In the pendency of this case, Ben Lahoski died. Ann's son John now represents his mother as a guardian ad litem.
[2] Appellants point to a case from Belmont County Court of Appeals, Buczek v. Trimble (Dec. 30, 1994), Belmont App. No. 94-B-9, which held that the patient was not the employer of a home health care worker, where the care was paid for by the Department of Human Services. That court relied on the Coviello holding that there cannot be a contract of hire without a duty of the "employer" to pay the employee. For reasons cited elsewhere in this opinion, we do not agree this is the best analysis on this point. Additionally, the Buczek court had before it, in pleadings filed at the trial court level, a statement by the plaintiff that the patient was not her employer.
[3] Appellant admits she is not an employee of Genny's and is not entitled to workers' compensation through the agency. In a factually similar workers' compensation case, this Court found summary judgment in favor of the agency to be inappropriate where there was a genuine issue of material fact as to employment status of the injured worker. See Peterson v. Red Riding Hood Registry, Inc. (Feb. 2, 1994), Summit App. No. 15964, unreported, at 8-9.
[4] As discussed above, if the control over the work done vests in the client, the presumption would be that the client is the employer; if control vests in the worker, the presumption would be that the worker is an independent contractor.
[5] For example, the arrangement for a substitute worker appears to be within the scope of the agency. However, various documents prepared by Genny's variously assign the right and responsibility for providing an alternate caregiver when a worker cannot work. One document states "Scheduling is to be done by the office. If you are unable to work your shift, please call the office and other arrangements will be made. Please inform the office if switching shifts." (Sic.) Another document says "You must call personally to the agency to report off for your shift. * * * If you feel the need to switch shifts with a co/worker [sic], please have the courtesy to inform the agency of your actions. [sic](remember that [Genny's] contracts your employment and you in turn sub-contract from the agency) * * *.[)]"
Other indicia of control by the agency include Genny's list of the work that the worker must perform. Despite the contract's statement that direction and control will not come from the agency, the agency specifically prescribed a long list of duties to be performed, including keeping written reports on the patient's status, monitoring vital signs, bathing, cooking, housework, etc.
[6] The record does not include any information concerning the contract, if any, between Ben Lahoski and Genny's. Thus we are not able to analyze how Ben Lahoski viewed his employer status vis-a-vis the worker or the agency.