BOOKWALTER, Admr., Appellants,

v.

PRESCOTT et al., Appellees.

Lenzie, Admr., Appellant,

v.

Prescott et al., Appellees.

[Cite as *Bookwalter v. Prescott*, 168 Ohio App.3d 262, 2006-Ohio-585.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–05–1015.

Decided Feb. 10, 2006.

Steven L. Crossmock, Janine T. Avila, Steven P. Collier, and Jason A. Hill, for appellants.

Stuart J. Goldberg, for appellee Vinings Industries Inc., n.k.a. Kemira Chemicals, Inc.

Donald E. Theis and Janet L. Miggins, for appellee Great Lakes Recovery.

PIETRYKOWSKI, Judge.

{¶ 1} This is an appeal from a summary judgment issued by the Lucas County Court of Common Pleas to appellees Vinings Industries, Inc., n.k.a. Kemira Chemicals, Inc. ("Kemira") and Great Lakes Recovery ("Great Lakes") in a dispute over vicarious liability for the deaths and injuries resulting from a motor-vehicle accident. Because we conclude that the trial court did not impermissibly weigh the evidence, we affirm.

{¶ 2} James R. Lenzie, Donald L. Bookwalter, and Travis D. Bookwalter were killed and James Lester Lenzie and Richard L. Sorensen were severely injured in a motor-vehicle accident when their vehicle collided with a tanker truck driven by Calvin Prescott. At the time of the May 20, 2001 accident, Prescott was traveling south on I–75 on his way to his home in Ridgeville, Indiana. Prescott was returning from delivering a load of sodium silicate from Kemira's plant in Fortville, Indiana to Great Lakes in Ecorse, Michigan. Prescott had been making payments to purchase the tanker truck at the time of the accident. It had an Interstate Commerce Commission placard with C & R Prescott Trucking displayed on it. Prescott did business as C & R Prescott Trucking, but C & R Prescott Trucking was not incorporated.

{¶ 3} Prescott was initially recruited in 1996 to regularly transport sodium silicate in his tanker truck from Kemira to Great Lakes through either a contact at Great Lakes, Marcelino Martinez, or a contact at Power Silicates,[1] Brooks Walden. Prescott had no written contract with either Kemira or Great Lakes for his hauling duties or any written lease with either Kemira or Great Lakes relative to the tanker truck. However, Kemira and Great Lakes[2] had a series of renewable three-year purchase and sales agreements for the sodium silicate. During the years that Prescott delivered to Great Lakes, he delivered approximately 90 percent of the sodium silicate that Great Lakes purchased from Kemira. The shipments of sodium silicate were tracked through the use of an annual blanket purchase order from Great Lakes and a bill of lading for each individual shipment printed by Kemira. Upon picking up a load at Kemira, Prescott signed this bill of lading on a line titled "agent."

---

1. Power Silicates was an entity that formerly owned the Fortville, Indiana facilities that Vinings, now Kemira, owns and operates.

2. The purchase and sale agreement in effect at the time of the accident ran from January 1, 2000 through December 31, 2002, and was in the name of Vining Industries, Inc., Kemira's predecessor, and National Recovery Systems, Great Lakes Recovery's parent company. Herein, the court makes all references to Vinings Industries and its successor Kemira as "Kemira" and all references to National Recovery Systems and its division Great Lakes Recovery as "Great Lakes."

{¶ 4} Prescott had responsibility for periodically checking on the level of sodium silicate at Great Lakes, either by phone or in person, and transporting a load to Great Lakes from Kemira when the level became low. Prescott was informed by Martinez that if he ever let the sodium silicate at Great Lakes run empty, his hauling services from Kemira to Great Lakes would no longer be needed. Prescott paid for the maintenance of his tanker truck, the fuel for it, as well as for insurance on it. Prescott received no professional training from either Kemira or Great Lakes, and neither entity specified the route he was to take between the facilities. Prescott was paid by Kemira according to the number of pounds of sodium silicate he hauled from Kemira to Great Lakes. Ultimately, Prescott's freight charges were billed by Kemira to Great Lakes as part of the cost of the sodium silicate. Prescott received a 1099 tax form from Kemira each year.

{¶ 5} On September 4, 2002, appellants filed an initial complaint that included a claim against Kemira, asserting vicarious liability for Prescott's negligence as Prescott's employer. On February 19, 2003, appellants filed an amended complaint that included a similar vicarious liability claim against Great Lakes. On July 1, 2004, the trial court granted both appellee Kemira's and appellee Great Lakes' motions for summary judgment. On December 15, 2004, appellants and Prescott, individually, and Prescott d.b.a. C & R Prescott Trucking, entered into a consent judgment entry for $10,000,000 in damages. Appellants assert the following assignments of error:

{¶ 6} "1. The trial court erred in granting summary judgment in favor of Great Lakes and Vinings by finding as a matter of law that Calvin Prescott was an independent contractor because reasonable minds could conclude that Prescott was an employee or agent of Great Lakes or Vinings, or both.

{¶ 7} "2. The trial court erred in granting summary judgment in favor of Great Lakes and Vinings because it exceeded the scope of its authority under Ohio Civil Rule 56 by weighing the evidence and failing to construe the evidence most strongly in favor of Plaintiffs–Appellants."

{¶ 8} Appellate review of a trial court's grant of summary judgment is de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Accordingly, we review the trial court's grant of summary judgment independently and without deference to the trial court's determination. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153. Summary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46; Civ.R. 56(C). The burden of

showing that no genuine issue of material fact exists falls upon the party who moves for summary judgment. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 294, 662 N.E.2d 264. However, once the movant supports his or her motion with appropriate evidentiary materials, the nonmoving party "may not rest upon the mere allegations or denials of [his] pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E).

{¶ 9} Prior to embarking on a common-law analysis of Prescott's employment status, we must address appellees' argument relative to Prescott's employment status under federal statutory law. This issue was raised in Kemira's motion for summary judgment before the trial court, though the trial court's summary judgment opinion apparently did not address it. Both appellees cite *Wyckoff Trucking, Inc. v. Marsh Bros. Trucking Serv., Inc.* (1991), 58 Ohio St.3d 261, 569 N.E.2d 1049, in the instant appeal in advocating for emphasis on a statutory analysis of Prescott's employment status under the Interstate Commerce Commission regulations rather than application of the common-law doctrine of respondeat superior. In fact, appellee Great Lakes cites *Wyckoff* for its contention that the common-law doctrine of respondeat superior plays no role in this case. In response, appellants contend that Prescott can be a statutory employee of Prescott Trucking as well as a common-law employee of either Kemira or Great Lakes at the same time. In other words, appellants assert that establishment of Prescott Trucking as the statutory employer of Prescott with primary liability does not preclude a finding of secondary liability for either Kemira or Great Lakes as common-law employers.

{¶ 10} In *Wyckoff*, the court noted there were two differing points of view with regard to the determination of tort liability arising out of accidents involving leased vehicles of interstate motor carriers under I.C.C. regulations. Id. at 265, 569 N.E.2d 1049. As the court stated, "[u]nder the minority view, a written lease in combination with the display of I.C.C. placards creates only a rebuttable presumption of an employment relationship between the driver of the vehicle and the carrier-lessee indicated on the placards. Thus, the carrier-lessee's liability is ultimately determined by resort to common-law doctrines such as *respondeat superior*." Id. "On the other hand, the majority view holds that Section 1057.12(c)(1), Title 49, C.F.R. creates an irrebuttable presumption of an employment relationship between the carrier-lessee and the driver of the vehicle that displays the I.C.C. placards of the carrier-lessee." Id. In *Wyckoff*, the Supreme Court of Ohio sided with the majority view and held:

{¶ 11} "1. In tort causes of action involving leased vehicles of interstate motor carriers, primary liability shall be determined with regard to Interstate Commerce Commission regulations rather than the common-law doctrines of *respon-*

*deat superior*, master-servant, independent contractor and the like. (*Thornberry v. Oyler Bros., Inc.* [1955], 164 Ohio St. 395, 58 O.O. 189, 131 N.E.2d 383, overruled to the extent inconsistent herewith.)

{¶ 12} "2. In order for liability to attach on an interstate carrier-lessee under Interstate Commerce Commission regulations, it must be established that, at the time the cause of action arose, (1) *a lease* of the vehicle was in effect and (2) the vehicle displayed the carrier-lessee's placard listing its I.C.C. numbers. (Section 1057.12, Title 49, C.F.R., applied.)

{¶ 13} "3. Section 1057.12(c)(1), Title 49, C.F.R. creates an irrebuttable presumption of an employment relationship between the carrier-lessee and the driver of a vehicle that displays the I.C.C. identification numbers of the carrier-lessee." (Emphasis added.) Id. at syllabus.

{¶ 14} Appellants cite a 1992 post-*Wyckoff* amendment to the I.C.C. regulations and assert that the amendment effectively abrogated *Wyckoff*'s irrebuttable presumption of an employment relationship between a driver and a carrier-lessee whose I.C.C. placard is displayed on the vehicle. In 1992, the I.C.C. amended Section 1057.12(c), Title 49, C.F.R. to add the following:

{¶ 15} "(4) Nothing in the provisions required by paragraph (c)(1) of this section is intended to affect whether the lessor or driver provided by the lessor is an independent contractor or an employee of the authorized carrier lessee." [3]

{¶ 16} We agree that there may be a question regarding the status of *Wyckoff*'s irrebuttable presumption after this amendment. See *Hughes v. Brogan* (Jan. 12, 1995), 10th Dist. Nos. 94APE05–731, 94APE08–1226, 1995 WL 12110.[4] However, we do not have to resolve that issue because *Wyckoff* is not applicable to the present case. *Wyckoff* and the federal statute that it interprets both addressed vehicles of interstate motor carriers subject to a *written lease*. In the present case, there was no written lease entered into between either Prescott or Prescott d.b.a. C & R Prescott Trucking and Kemira or Great Lakes.

---

**3.** In 1997, Section 1057.12, Title 49, C.F.R. was renumbered Section 376.12. See, also, *In Ex Parte No. MC–203 Petition to Amend Lease & Interchange of Vehicle Regulations* (1992), 8 I.C.C.2d 669, 670, for a discussion on the commission's intent in adding the language of Section 1057.12(c)(4) to take "no position on the independence of lessors," and for state courts *not* to hold that these control regulations are "prima facie evidence of an employer-employee relationship." Id. at 671.

**4.** The Tenth District Court of Appeals stated as follows without any further related analysis: "We acknowledge that changes have occurred since the Supreme Court decided *Wyckoff* * * *. These changes would make appropriate a revisiting of the *Wyckoff Trucking* opinion by the Ohio Supreme Court. However, we are not at liberty to disregard the Supreme Court's opinion."

Therefore, *Wyckoff* does not apply and we must analyze Prescott's employment status under the common law.

{¶ 17} Under the common law, whether someone is an employee or an independent contractor is ordinarily an issue of fact. *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 524 N.E.2d 881, at paragraph one of the syllabus. "However, when there is no conflict in the evidence, or the facts are admitted, the question is one of law to be decided by the trial court." *Martinez v. Trimble* (Dec. 29, 1995), 6th Dist. No. L–95–160, 1995 WL 764045, citing *Bostic,* 37 Ohio St.3d at 146, 524 N.E.2d 881. "The key factual determination is who had the right to control the manner or means of doing the work." *Bostic* at paragraph one of the syllabus. In *Bostic,* the Supreme Court of Ohio stated that in determining who has the right to control the manner or means of doing the work:

{¶ 18} "The factors to be considered include, but are certainly not limited to, such indicia as who controls the details and quality of the work; who controls the hours worked; who selects the materials, tools and personnel used; who selects the routes travelled [sic]; the length of employment; the type of business; the method of payment; and any pertinent agreements or contracts." Id., 37 Ohio St.3d at 146, 524 N.E.2d 881.

{¶ 19} All indicia of an employment relationship in a given case must be assessed together as a whole. *Harmon v. Schnurmacher* (1992), 84 Ohio App.3d 207, 211, 616 N.E.2d 591, citing *Gillum v. Indus. Comm.* (1943), 141 Ohio St. 373, 48 N.E.2d 234.

{¶ 20} Appellants concede that there are several facts that support an independent-contractor status of Prescott/Prescott d.b.a. C & R Prescott Trucking. Prescott received a 1099 tax form rather than a W–2 form each year; he paid for all the maintenance, insurance, and fuel for his truck; and he was not required to take any particular route between Kemira and Great Lakes. However, appellants contend that there were several factors that pointed to an employer-employee relationship between either Kemira or Great Lakes and Prescott that were for a trier of fact to weigh and consider rather than for the trial court to decide on summary judgment.

{¶ 21} First, appellants point to Prescott's testimony that under the direction of Martinez, Prescott had responsibility for keeping the supply of sodium silicate at Great Lakes at an adequate level as evidence that Great Lakes controlled the manner or means of Prescott's work. Prescott testified regarding his understanding of the repercussions if he failed in that responsibility:

{¶ 22} "A. That's the reason why I had the job, because I took care of the man's—so at the plant he told me when he hired me, if my plant ever shuts down for lack of material because of you not being here, you won't be here no longer.

{¶ 23} "Q. That's what Martinez told you?

{¶ 24} "A. Yes, sir.

{¶ 25} "Q. So he said if somehow you don't deliver the product and we have to shut down, you're done?

{¶ 26} "A. That's right, if somebody has to do it for you, you won't be here."

{¶ 27} Appellants assert that this demonstrates that Great Lakes had the right to "fire" Prescott. However, this does not constitute control by Great Lakes of the manner or means of Prescott doing the hauling work. See *Pfau v. Cincinnati Enquirer* (Mar. 30, 1987), 12th Dist. No. CA86–03–019, 1987 WL 8935. The right to "fire" or "terminate" a person because that person did not achieve the desired *result* of the business relationship is not incompatible with an independent-contractor status. Id.; *Norris v. Citizens Publishing Co.* (Feb. 16, 1932), 2d Dist. No.2086, 1932 WL 2428. Neither is the alleged "requirement" that Prescott use a tanker truck to haul the sodium silicate. Neither Kemira nor Great Lakes was controlling the manner or means of Prescott's hauling work by this requirement because this was the only trucking means to haul the sodium silicate, which is a liquid.

{¶ 28} Appellants also point to the bill of lading as evidence that Prescott was Kemira's "agent." The bill of lading was printed at Kemira with Vinings name printed on it as "shipper." When Prescott picked up a load from Kemira, he wrote the name "C & R Prescott Trucking" on a line titled "agent." This line also included the designation "per" after which Prescott signed his name "C. Prescott." When questioned about this, Prescott testified as follows:

{¶ 29} "Q. We saw on that bill of lading that you signed as agent for Vinings Industries, is that correct?

{¶ 30} "A. I'm not an agent, I'm a trucker.

{¶ 31} "Q. You did sign the document where it said 'as agent,' correct?

{¶ 32} "A. I signed it—I'm as C & R Trucking, Prescott Trucking, I signed that bill as I was the trucker."

{¶ 33} From the foregoing, it is clear that Prescott did not intend to sign the bill of lading as agent for Kemira/Vinings. Appellees also cite the definition of "bill of lading" in arguing that Prescott's signature offers no significance relative to Prescott's employment relationship with Kemira. We agree. R.C. 1301.01(F) provides, " 'Bill of lading' means a document evidencing the receipt of goods for shipment *issued by a person engaged in the business of transporting* or forwarding goods * * *." (Emphasis added.) Reasonable minds could conclude only that Prescott signed the bill of lading as agent for Prescott Trucking.

{¶ 34} Appellants also allege that Prescott's exclusive six-year service for Kemira and Great Lakes is a factor to be weighed in favor of Prescott's status as an employee. In support, appellants cite the recent case of *Mendoza v. Bishop,* 12th Dist. No. 2004–04–080, 2005-Ohio-238, 2005 WL 123982, and *Harmon v. Schnurmacher* (1992), 84 Ohio App.3d 207, 616 N.E.2d 591, in which the worker was found to be an employee as a matter of law. However, *Mendoza* and *Harmon* involved the employment status of a horse-farm laborer and a personal nurse, respectively. Further, in *Harmon,* there were additional indicia of the nurse's status as an employee beyond merely the length and exclusivity of her service, including work hours set by the employer, hourly pay, and the existence of fringe benefits such as paid vacation and additional holiday pay. Likewise, in *Mendoza,* the additional indicia included that the laborer lived on the premises at no cost, was paid a weekly salary, and the employer supplied all the equipment and materials used in the job.

{¶ 35} We find *Clouse v. Quick Air Freight, Inc.* (Dec. 22, 1994), 10th Dist. No. 94APE05–764, 1994 WL 714498, more relevant to the present case. *Clouse* involved summary judgment issues relative to whether a trucker was an employee rather than an independent contractor. However, in *Clouse,* the court found critical to its determination that a material issue of fact existed, the fact that under a written lease agreement, the trucker was *not permitted* to do jobs for anyone else. In addition, the employer told the driver what repairs to make to the vehicle and required the driver to take medical exams given by a doctor selected by the employer. In contrast to *Clouse,* in the present case, there is neither a written lease agreement nor any other evidence that Prescott was *precluded* from hauling for other entities. Prescott just chose not to haul for anyone else. Further, all vehicle maintenance issues were at Prescott's discretion, and neither Kemira nor Great Lakes required any medical exams. Neither *Harmon, Mendoza,* nor *Clouse* lead this court to conclude that length of service, as a sole indicator, precludes a summary judgment finding.

{¶ 36} Finally, appellants assert that there are several material questions of fact raised by the record that precluded summary judgment for appellees. Specifically, who recruited or "hired" Prescott and who made the decisions relative to his rate of pay. Prescott testified that Martinez of Great Lakes initially called him concerning hauling sodium silicate. However, Martinez testified that he could not remember if he or Walden of Powers Silicates contacted Prescott about hauling the sodium silicate. Further, Prescott testified that if he needed a pay raise to cover increasing expenses, he could not recall if he contacted someone at Kemira or Martinez at Great Lakes. Ken White, sales representative at Kemira, testified that Martinez "pretty much defined" the freight rate to Kemira and Martinez was "in control" of the freight rate.

Martinez recalled Prescott raising the issue of a pay increase with him. However, Martinez did not recall renegotiating the freight rate with anyone at either Kemira or Great Lakes on Prescott's behalf. Based on this somewhat conflicting testimony, there may be a question of fact regarding which entity first contacted Prescott and which entity had the power to increase Prescott's pay. However, these questions are not material to a determination of Prescott's employment status. The fact that an entity "hires" a driver does not preclude a finding of an independent-contractor status. See *Koch v. Lind* (1997), 121 Ohio App.3d 43, 57, 698 N.E.2d 1035. Those issues are not relevant to the critical inquiry of who had the right to control the manner or means of doing the work.

{¶ 37} After a thorough review of the record, reasonable minds could conclude only that neither Prescott nor Prescott d.b.a. C & R Prescott Trucking was an employee or agent of either Great Lakes or Kemira, because neither Great Lakes nor Kemira retained the right to direct the manner in which the transporting work was completed by Prescott. Both were merely interested in the result—that Great Lakes had a constant supply of sodium silicate. Further, the trial court did not exceed the scope of its authority under Civ.R. 56 by weighing the evidence and failing to construe the evidence most strongly in favor of appellants.

{¶ 38} Based on the foregoing, we find appellants' assignments of error not well taken. Accordingly, the judgment of the Lucas County Court of Common Pleas is affirmed.

Judgment affirmed.

SINGER, P.J., and HANDWORK, J., concur.