[Cite as *Evers v. R. Humr Constr. Co., Inc.*, 2020-Ohio-2891.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| THOMAS MICHAEL EVERS, ADMINISTRATOR OF THE ESTATE OF THOMAS EVERS, SR., et al., | : | **O P I N I O N** |
| | : | |
| Plaintiffs-Appellees, | : | |
| | | **CASE NO. 2018-G-0184** |
| - vs - | : | |
| | : | |
| R. HUMR CONTRUCTION, CO, INC., et al., | : | |
| | : | |
| Defendants-Appellants. | : | |

Civil Appeal from the Geauga County Court of Common Pleas, Case No. 2017 M 000604.

Judgment: Affirmed.

*Patrick M. Farrell*, Patrick M. Farrell, Co., LPA, 600 East Granger Road, 2nd Floor, Brooklyn Heights, Ohio 44131 (For Plaintiffs-Appellees).

*Scott J. Davis*, The Law Office of Stephen J. Proe, 6000 Lombardo Center, Suite 420, Seven Hills, Ohio 44131 (For Defendants-Appellants).

THOMAS R. WRIGHT, J.

{¶1}   Appellants, Robert K. Humr and R. Humr Construction Co, Inc., appeal the denial of summary judgment based on political immunity due to material issues of fact. We affirm.

{¶2}   Thomas Evers, Sr. ("Evers"), a sixteen-year employee of Parkman

Township, a political subdivision in Geauga County, Ohio, died as a result of a work-related accident. Evers, a road superintendent, had various responsibilities including coordinating road repairs.

{¶3} In July 2015, it became necessary to replace a culvert below Reeves Road, a gravel thoroughfare. Evers contacted a deputy engineer at the Geauga County Engineer's Office. After the two inspected the culvert and discussed the project in general, the deputy engineer created a Site Plan for replacing the culvert. Since it would be necessary to dig a trench approximately thirteen feet deep across the entire width of the road, the Site Plan mandated that the land surrounding the trench be sloped in a specific manner to prevent the dirt from collapsing.

{¶4} In preparation, Evers also contacted appellant, Robert K. Humr, a sole proprietor of a local excavation company. Humr had no formal training regarding safety requirements for major excavations but has reviewed a state manual on the subject. He therefore had general knowledge of sloping when a trench is more than five feet deep.

{¶5} Parkman Township did not own the equipment needed to dig the trench. Humr and his company were hired to dig the trench and to assist in the placement of the culvert. Humr's company was paid on an hourly basis.

{¶6} The project went forward on August 3 and 4, 2015. At no point during the project did Evers show Humr the Site Plan sloping requirements. Instead, according to Humr, Evers painted lines on the ground and instructed him to dig between the lines. This resulted in a trench with two vertical sides that formed ninety-degree angles with the bottom. Humr knew that by not sloping the sides he was creating a dangerous condition.

{¶7} Once the old culvert was removed and the trench was cleared of all debris,

2

Humr used his excavator to place sections of the culvert into the trench. As he did so, Evers and a second township employee, Joe Rager, were inside the trench helping guide each culvert section so that it connected with the prior section. Once each section was properly placed, Humr poured buckets of stones around the section. Evers would then get back into the trench and tamp the stones, using a motorized tamper. On several occasions, Humr warned Rager not to stay in the trench while Evers was using the tamper.

{¶8} While Evers was tamping stones around a section near the middle of the road, Humr saw a crack forming in the dirt on one side of the trench. Humr tried to warn Evers of the pending danger, but Evers could not hear him over the noise. The dirt collapsed, and Evers was buried. When Evers was dug out, he was still breathing but subsequently died as a result of injuries suffered.

{¶9} Evers's estate sued for wrongful death, naming Parkman Township, Humr, and Humr Construction Company as defendants. Evers's son, Thomas Michael Evers, also personally asserted a claim for loss of companionship. The two claims pertaining to Humr and his company allege that Humr acted either negligently or recklessly in failing to warn Evers of the inherent danger posed by digging the trench with two vertical sides, or in failing to comply with the state regulations in digging the trench. As to Parkman Township, the complaint alleges that the Township failed to provide adequate training for Evers to recognize the dangers posed by the lack of slope around the trench.

{¶10} Humr and his excavation company (collectively referred to as "Humr") moved for summary judgment asserting political subdivision immunity as to the wrongful death and the loss of companionship claims. Humr asserted that it is undisputed that

3

Evers exercised control over the work site and dictated the manner in which the trench was to be dug. Humr further asserted that he was not acting as an independent contractor in performing the work but was instead an employee or agent of Parkman Township.

{¶11} Parkman Township filed a separate motion for summary judgment, arguing that it was immune under Workers' Compensation Act because there was no evidence that Evers's death was the result of an intentional tort. Evers's estate and his son, appellees, responded to the motions. Regarding Humr's motion, appellees contend that Humr was an independent contractor because Parkman Township admitted that it had never hired Humr as a township employee. As to the Township's motion, appellees argue that the failure to provide adequate training or education to Evers made it a substantial certainty that Evers would be harmed.

{¶12} The trial court overruled both motions for summary judgment. In relation to Humr's motion, the court held that summary judgment could not be granted because genuine issues as to material facts still remain.[1]

{¶13} Humr appeals, raising two assignments:

{¶14} "[1.] The trial court committed prejudicial error overruling Defendants-Appellants Robert K. Humr and R. Humr Construction Co., Inc.'s motion for summary judgment when they are immune from liability under R.C. Chapter 2744.

{¶15} "[2.] The trial court committed prejudicial error overruling Defendants-Appellants Robert K. Humr and R. Humr Construction Co., Inc.'s motion for summary

---

[1] Although a determination overruling a motion for summary judgment is generally not a final order that can be appealed immediately, the Ohio Supreme Court has interpreted R.C. 2744.02(C) to permit an immediate appeal from the denial of summary judgment when the moving party sought immunity from liability under R.C. Chapter 2744. *See Hubbell v. City of Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, syllabus; *Riscatti v. Prime Properties Ltd. Partnership*, 137 Ohio St.3d 123, 2013-Ohio-4530, 998 N.E.2d 437, ¶19.

4

judgment when Defendant-Appellant Humr was immune from liability under R.C. 4123.741."

{¶16} The assignments will be addressed together. The issue is whether there is an issue of material fact as to whether Humr was an employee agent or an independent contractor. Humr contends that he was an agent or employee of the Parkman Township because Evers exercised complete control over the way in which the work was performed and is therefore entitled to political subdivision immunity or co-employee immunity.

{¶17} Appellate review of a summary judgment ruling is de novo. *Silver v. Statz*, 168 Ohio App.3d 148, 2006-Ohio-1727, 849 N.E.2d 320, ¶ 10 (8th Dist.), citing *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241. "De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether, as a matter of law, no genuine issues exist for trial." *Id.*, citing *Brewer v. Cleveland City Schools*, 122 Ohio App.3d 378, 701 N.E.2d 1023. Under de novo review, an appellate court reviews the summary judgment ruling independently and without deference to the trial court. *Bookwalter v. Prescott*, 168 Ohio App.3d 262, 2006-Ohio-585, 859 N.E.2d 978, ¶ 8 (6th Dist.).

{¶18} "Summary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O. 73, 375 N.E.2d 46; Civ.R. 56(C). The burden of showing that there are no genuine issues of material fact falls upon the moving party. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 294, 662 N.E.2d 264. However, once the movant supports his or her

5

motion with appropriate evidentiary materials, the nonmoving party 'may not rest upon the mere allegations or denials of [his] pleadings, but his response, by affidavit or as otherwise provided in the rule, must set forth specific facts showing that there is a genuine issue for trial.' Civ.R. 56(E)." *Id.*

{¶19} If Humr was acting as an employee of Parkman Township when the incident occurred, he would be immune from liability unless he acted with malicious purpose, in bad faith, or in a reckless manner. *Kiep v. City of Hamilton*, 12th Dist. Butler No. CA96-08-158, 1997 WL 264236, *8 (May 19, 1997), citing R.C. 2744.03(A)(6). But, if he was an independent contractor, the statutory immunity for employees of political subdivisions would not apply. *Id.*

{¶20} The determination of Humr's status, i.e., employee or independent contractor, turns upon the particular facts of each case. *Meek v. Tom Sexton & Assoc., Inc.*, 163 Ohio App.3d 549, 2005-Ohio-5188, 839 N.E.2d 437, ¶ 12 (9th Dist.), citing *Bobik v. Indus. Comm.*, 146 Ohio St. 187, 191, 64 N.E.2d 829 (1946). Thus, the determination ordinarily involves questions of fact. *Silver*, 2006-Ohio-1727, at ¶ 16, citing *Bostic v. Connor*, 37 Ohio St.3d 144, 146, 524 N.E.2d 881. Nevertheless, when there is no conflicting evidence, the issue becomes a question of law for the trial court to decide. *Id.*

{¶21} The primary consideration for determining whether one is an employee or independent contractor is control over the manner or means of completing the job. *Meek*, 2005-Ohio-5188, at ¶ 12. If the right to control the work lies with Parkman Township, then Humr is an employee. *Id.* In deciding who has the right to control the work, the trier of fact applies the following factors: "(1) who controls the details and quality of work, (2) who controls the hours of work; (3) who selects the materials, tools, and personnel used, (4)

6

who selects the routes traveled, (5) the length of employment, (6) the type of business, (7) the method of payment, and (8) any pertinent agreements or contracts." *Silver*, 2006-Ohio-1727, at ¶ 15, citing *Bostic*, 37 Ohio St.3d at 146.

{¶22} However, while the right to control performance of the work is the main consideration in determining status, other considerations are also relevant. "All indicia of an employment relationship in a given case must be assessed together as a whole." *Bookwalter*, 2006-Ohio-585, at ¶ 19. "[O]ther indicia of the employment versus independent contractor relationship are (1) whether the one employed is engaged in a distinct occupation or business; (2) whether the work is done by a specialist, requiring a particular skill; (3) whether the worker or the employer supplies the place and requisite instrumentalities; (4) the length of time for which the person is employed; (5) the method of payment, whether by the time or by the job; and (6) whether the work is a part of the regular business of the employer." *Harmon v. Schnurmacher*, 84 Ohio App.3d 207, 212, 616 N.E.2d 591 (11th Dist.1992).

{¶23} In moving for summary judgment, Humr presented some evidence from which it could be inferred that Evers, as the road superintendent for Parkman Township, exercised control over the work site. First, as part of his deposition, Humr testified that Evers painted lines on the ground showing the location of the trench and expressly telling him where to dig. Second, during his deposition, Joe Rager testified that Evers oversaw the work site, was the sole person giving orders, and gave Humr specific instructions about where he should dig. Third, the evidence established that Evers made all the preparations for the work to go forward, such as ordering the gravel to place around the new culvert.

7

{¶24} Yet, even though the evidence relating to the "right to control" factor lends support to the finding that Humr was acting as an employee of the township, the evidence as to other relevant factors support the finding that he was an independent contractor. First, Humr owned his own excavation company and used his company equipment in digging the trench. Second, Humr's operation of the excavator was a specialized skill that neither Evers nor any other township employee could not perform. Third, there is no evidence that Humr would be performing other work or projects for Parkman Township, i.e., the scope of his work was limited to the installation of the new culvert.

{¶25} Taken as a whole, the evidence presented by the parties creates a factual dispute as to whether Humr was acting as an independent contractor or as a township employee in digging the trench for the new culvert. Until that dispute is resolved by a jury, a final determination cannot be made as to whether Humr and his company are immune from liability as employees of Parkman Township and co-employees of Evers. As a result, the trial court did not err in overruling their motion.

{¶26} Both assignments are without merit. The judgment of the Geauga County Court of Common Pleas is affirmed.

CYNTHIA WESTCOTT RICE, J.,

MATT LYNCH, J.,

concur.

8