[Cite as *Ehrhardt v. Chatlain Ents., Inc.*, 2011-Ohio-3223.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| | : | JUDGES: |
| KENNETH EHRHARDT | : | W. Scott Gwin, P.J. |
| | : | John W. Wise, J. |
| Plaintiff-Appellant | : | Julie A. Edwards, J. |
| | : | |
| -vs- | : | Case No. 10CA123 |
| | : | |
| | : | |
| CHATLAIN ENTERPRISES, INC., et al., | : | O P I N I O N |
| | | |
| Defendants-Appellees | | |

CHARACTER OF PROCEEDING:                    Civil Appeal from Richland County
                                                                        Court of Common Pleas Case No.
                                                                        09CV51

JUDGMENT:                                                      Affirmed

DATE OF JUDGMENT ENTRY:                     June 22, 2011

APPEARANCES:

For Plaintiff-Appellant                                   For Defendants-Appellees

EDWARD D. MURRAY                                  KEVIN J. REIS, ESQ.
DAVID E. BUTZ                                            Assistant Attorney General
JOHN A. BURNWORTH                               Workers' Compensation Section
Krugliak, Wilkins, Griffiths &                        150 East Gay Street, 22nd Floor
Dougherty Co., LPA                                    Columbus, Ohio  43215
4775 Munson Street, N.W.
P.O. Box 36963                                          JOHN TARKOWSKY
Canton, Ohio  44735-6963                           Baran, Piper, Tarkowsky,
                                                                      Fitzgerald & Theis Co., LPA
                                                                      3 N. Main Street, Suite 500
                                                                      Mansfield, Ohio  44902

*Edwards, J.*

{¶1} Plaintiff-appellant, Kenneth Ehrhardt, appeals from the September 17, 2010, Order of the Richland County Court of Common Pleas granting the Motion for Summary Judgment filed jointly by defendants-appellees Bureau of Workers' Compensation and Chatlain Enterprises, Inc..

STATEMENT OF THE FACTS AND CASE

{¶2} For approximately five years, appellant worked for Groendyke Transport as a truck driver. He received health insurance through Groendyke, was paid biweekly and received vacation time as an employee. As an employee of Groendyke, appellant wore a uniform, was provided with a truck by Groendyke and the name Groendyke was printed on the side of the truck that he drove. Appellant's last day of employment with Groendyke was on June 13, 2006.

{¶3} In April of 2006, appellant purchased a truck from Duane Chatlain, the President of appellee Chatlain Enterprises, Inc., for $8,000.00. Appellant, who was a resident of Missouri, flew to Ohio, got the title to the truck and then drove it back to Missouri where he registered the same and obtained Missouri license plates. Appellant later purchased a trailer from someone in Iowa in June of 2006. Appellant paid for the Missouri license plates for both vehicles.

{¶4} On or about May 1, 2006, appellant signed an Independent Contractor Agreement with appellant Chatlain Enterprises. The Agreement was signed by appellant Kenneth Ehrhardt and Sharon Ehrhardt dba K.C.E. Transports. The agreement stated, in relevant part, as follows:

{¶5} "It is the intent of the parties that CONTRACTOR [Ken and Sharon Ehrhardt dba K.C.E Transports] shall be an independent contractor with respect to CARRIER [Chatlain Enterprises']. Neither CONTRACTOR or any driver, employee or other worker engaged by CONTRACTOR shall be deemed an employee or agent of CARRIER under any circumstance or for any purpose, including, but not limited to, federal or state payroll taxes, income tax withholding, workers compensation premiums or unemployment taxes."

{¶6} The agreement further provided that it was understood and agreed that appellant Chatlain Enterprises "does not have the right to, and will not control the manner, or prescribe the method of performing the services covered by this agreement." Paragraph 4 of the agreement states as follows: "OFFER/ACCEPTANCE OF WORK" This Agreement does not obligate CONTRACTOR [appellant] to accept for transportation every or any trip offered by CARRIER [appellee Chatlain Enterprises] to CONTRACTOR, nor does it obligate CARRIER to offer any trips to CONTRACTOR. However, multiple, repeated refusals by CONTRACTOR to accept loads may be grounds for termination of this Agreement." The Agreement further provided that appellant was to provide his own vehicle and equipment and maintain the same, was to pay all operating costs and was responsible for obtaining workers' compensation coverage and providing his own liability and cargo insurance.

{¶7} On or about June 4, 2006, appellant signed an "Employment Eligibility Verification" form (an I-9 form) stating that he was a citizen or national of the United States. Linda Chatlain signed such form on behalf of appellee Chatlain Enterprises. On the same date, appellant signed a "Driver Application" form listing his date of birth,

social security number, and information relating to his driver's license. The form stated, in relevant part, as follows: "I understand that (sic) must have a pre-employment drug screen and a current physical (within the last 2 years), that will be paid for by Chatlain Enterprises, in order to be employed by Chatlain Enterprises."

{¶8} From approximately May 1, 2006 to July 14, 2006, appellant drove for appellee Chatlain Enterprises. Appellant kept logs of where he went and provided the same to appellee Chatlain Enterprises. In addition, appellee Chatlain Enterprises provided him with their invoices so that he could invoice its customers. Appellee Chatlain paid appellant 95% of each load fee and, out of this 95%, appellant paid "for [his] portion of the cargo, of the liability, of the fuel taxes, of all the things that normally a company that would take 20% would be paying." October 26, 2009, Deposition of Kenneth Ehrhardt at 61. During his deposition, appellant testified that he paid for his share of the insurance, the cargo insurance and liability insurance because appellee Chatlain Enterprises billed him periodically for that expense. He testified that he bought fuel out of his own pocket and paid maintenance expenses out of his own pocket.

{¶9} Appellant testified that Duane Chatlain gave him a list of accounts to call on for loads that he could haul for in the event that he had completed a delivery for appellee Chatlain Enterprises and did not have another hauling assignment from appellee Chatlain Enterprises. Appellant testified that after unloading a load, he was able to use the list of brokers and call them up himself and see if they had any load going back to wherever he was headed because he did not want to come back empty. Appellant testified that he often made such calls from his home in Missouri. According to appellant, at one point, he called up a farmer in this manner and got an assignment

from the farmer hauling a load of hay from Nebraska to Texas. The following testimony was adduced when appellant was asked, during his deposition, whether he had the right to refuse a load:

{¶10} "Q. Did you have the right to refuse a load?

{¶11} "A. We never actually got into that. Obviously if I had taken that tact, you know, it would have jeopardized my position with Chatlain Enterprises, and I obviously couldn't afford to immediately lose the job when I was on shaky grounds starting in the first place, you know, with as little money - - I was at the minimum to start a business. I would have liked to have turned down the load he gave me to get to Ohio so that I could haul these loads that the accident occurred on because it paid nothing, but I was afraid to do that.

{¶12} "Q. Okay. You are saying that as a practical matter, when you get an assignment, when you are offered a load, you take it, and you run the risk of being terminated if you refuse to take a load?

{¶13} "A. Yeah. If I don't do a service and do my job and do a service for him, then eventually it could affect that situation, yes." October 26, 2009, Deposition of Kenneth Ehrhardt at 136-137.

{¶14} Appellant made approximately 10 interstate trips for appellee Chatlain Enterprises and, on most of the trips, was advanced money by the shippers. He was not paid by the hour and there were no deductions from the money that he received from appellee Chatlain Enterprises for taxes and social security although he testified, during his deposition, that Chatlain would take deductions for his share of the cargo and liability insurance. Appellant testified that he paid for fuel at the fuel pump by using the

cash advances that he received or using his own credit card and that he did not get reimbursed for the same by appellee Chatlain. Appellant never filled out an employment application with appellee Chatlain, never took an employment physical and did not wear a uniform that said Chatlain Enterprises on it. He was not promised any vacation time and did not receive health insurance. The following is an excerpt from his deposition testimony:

{¶15} "Q. Were you supervised by anyone during your trips that you've described or have been discussing here, the 10 or so trips you did for Chatlain, were you supervised?

{¶16} "A. MR. BUTZ: Objection. Asked and answered.

{¶17} "A. Supervised in what way, sir?

{¶18} "Q. Was there anyone monitoring you, calling you, watching you drive the vehicle, or requiring you to report hourly where you were, what you were doing, anything like that that would constitute supervision?

{¶19} "A. No, not that I can think of any situation." October 26, 2009, Deposition of Kenneth Ehrhardt at 95-96.

{¶20} On July 14, 2006, appellant, after delivering a load to Ohio, was scheduled to pick up a load of plastic targets in Texas. Duane Chatlain offered appellant a chance to deliver a shipment to Missouri, which was on the way to Texas, and appellant took a flatbed trailer to a location where it was loaded with steel sheets on pallets. Appellant then met Duane Chatlain at Rocky's Truck Stop where the steel sheets were to be taken off of appellant's trailer and put into a box van. Appellant then was to make one trip, to Missouri and then to Texas, and be paid for two loads. At some point while

transferring the steel sheets from appellant's trailer to Duane Chatlain's trailer, appellant pulled his truck forward and the steel sheets fell from the trailer. While appellant and three other individuals were in the process of restacking the sheets onto a pallet, appellant was injured when steel sheets fell on him.

{¶21} After appellant's worker's compensation claim was disallowed based on the finding that appellant was an independent contractor and not an employee of appellee Chatlain Enterprises, appellant filed an appeal with the Richland County Court of Common Pleas. Appellees Bureau of Workers' Compensation and Chatlain Enterprises filed a joint Motion for Summary Judgment.

{¶22} As memorialized in an Order filed on September 17, 2010, the trial court granted the Motion for Summary Judgment, finding that the "undisputed facts show that [appellant] was an independent contractor on the day of the accident" and, therefore, was not entitled to workers' compensation benefits.

{¶23} Appellant now raises the following assignment of error on appeal:

{¶24} "THE TRIAL COURT ERRED IN GRANTING THE DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF-APPELLANT'S WORKERS' COMPENSATION CLAIM."

I

{¶25} Appellant, in his sole assignment of error, argues that the trial court erred in granting appellees' Motion for Summary Judgment. We disagree.

{¶26} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36, 506 N.E.2d 212. As

such, we must refer to Civ. R. 56(C) which provides in pertinent part: "Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."

{¶27} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates that the moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating that there is a genuine issue of material fact for trial. *Vahila v. Hall,* 77 Ohio St.3d 421, 429, 1997–Ohio–259, 674 N.E.2d 1164, citing *Dresher v. Burt,* 75 Ohio St.3d 280, 1996-Ohio-107, 662 N.E.2d 264.

{¶28} At issue in the case sub judice is whether appellant was an independent contractor or an employee of appellee Chatlain Enterprises. As noted by the court in *Brown v. CDS Transport, Inc.,* Franklin App. No. 10AP-46, 2010-Ohio-4606, "Whether a person is an independent contractor or an employee depends on the specific facts in the case, with the key question being who has the right to control the manner or means of performing the work. *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 524 N.E.2d 881. Factors that are considered in determining who has the right of control include: who controls the details and quality of the work; who controls the hours worked; who selects the materials, personnel, and tools used; who selects the routes traveled; length of employment; the type of business; the method of payment; and any pertinent agreements or contracts. *Id.*

{¶29} "Generally, the independent contractor-employee issue is one that must be determined by the trier of fact. *Id.* However, when the evidence is not in conflict or where the facts are not in dispute, the issue becomes a matter of law that may be decided by the trial court. *Id.* When sufficient evidence has been submitted to allow reasonable minds to come to different conclusions on the issue, a person's status as an independent contractor or employee is one that must be submitted to a jury. *Id.* See also *Chickey v. Watts,* 10th Dist. No. 04AP-818, 2005-Ohio-4974." Id at paragraphs 9-10.

{¶30} All indicia of an employment relationship in a given case must be assessed together as a whole. *Harmon v. Schnurmacher* (1992), 84 Ohio App.3d 207, 211, 616 N.E.2d 591, citing *Gillum v. Indus. Comm.* (1943), 141 Ohio St. 373, 48 N.E.2d 234.

{¶31} Upon our review of the record, we find that the trial court did not err in determining that appellant was an independent contractor rather than an employee of appellee Chatlain Enterprises. As is stated above, appellant, who owned his own truck and trailer, signed an independent contractor agreement that required him to provide his own vehicle and equipment and maintain the same, to pay all operating costs and to obtain workers' compensation coverage and his own liability and cargo insurance. Paragraph 4 of the agreement states as follows: "OFFER/ACCEPTANCE OF WORK" This Agreement does not obligate CONTRACTOR to accept for transportation every or any trip offered by CARRIER to CONTRACTOR, nor does it obligate CARRIER to offer any trips to CONTRACTOR. However, multiple, repeated refusals by CONTRACTOR to accept loads may be grounds for termination of this Agreement."

{¶32} Appellant, during his deposition, never testified, when asked, that he did not have the right to refuse a load, but rather testified that he was concerned that his relationship with appellee Chatlain Enterprises would be jeopardized if he did so. Appellant, during his deposition, also testified that appellee Chatlain Enterprises did not supervise his trips. Appellant testified that he did not recall appellee Chatlain Enterprises ever telling him that a shipment had to be completed by a certain date and that, when he picked up the bill of lading, he was not told when the load was to be delivered. Appellant further testified that it was his decision which route to take when traveling. Thus, appellee Chatlain Enterprises did not control the means and manner of appellant's work.

{¶33} Moreover, the evidence in the record shows that appellant never filled out an employment application or took a drug test or physical, was not provided with a

uniform and that his expenses were not paid by appellee Chatlain Enterprises.  He did not report to a place of employment, but rather received information relating to available loads from his home or truck.   Appellant, who testified that he did not tell anyone that he was an employee of appellee Chatlain Enterprises, did not receive health insurance through appellee Chatlain Enterprises and received no vacation time.   Appellant was not paid on a weekly or other basis, but rather was paid when appellee Chatlain Enterprises was paid for the load that appellant had hauled.   As is stated above, appellant received 95% of each load fee with appellee Chatlain Enterprises receiving the remaining 5%.  When appellant was paid by appellee Chatlain Enterprises, no taxes were withheld from his checks.  Appellant, who worked out of his own home, used his own cell phone and paid for his own fuel, with the possible exception of the day of the accident, using money that was advanced to him by shippers or his own credit card.  While appellant testified that, on the day of the accident, appellee Chatlain Enterprises paid for his fuel, appellee Chatlain Enterprises disagreed.  Even construing such fact in appellant's favor, we find that it did not, based on the entirety of the evidence, create a genuine issue of material fact regarding the conduct of the parties.  Appellant also paid his own license and registration fees and any maintenance costs.  Evidence also was adduced that appellant paid appellee Chatlain Enterprises monthly for the liability and cargo insurance that appellee Chatlain Enterprises carried for him. Appellant, during his deposition, also testified that he provided the straps for tying down his loads.

{¶34}  Moreover, appellant, during his deposition, testified that if he did not have an assignment from appellee Chatlain, he was free to call brokers or other entities and

ask for a job hauling for them.     He testified that, in one instance, he hauled a load of hay for a farmer who was not on appellee Chatlain Enterprise's list of shippers

{¶35} Appellant, in support of his argument that he was an employee, notes that appellee Chatlain Enterprises, in its broker agreements with various customers, stated that it would not rebroker, subcontract or have a third party carry the loads for the customer. On such basis, appellant contends that appellee Chatlain Enterprises represented to its customers that appellant was an employee. However, we concur with the trial court that "[w]hether or not Chatlain should have been brokering loads to [appellant] is an unrelated question. The law requires the court to examine which party controlled the manner and means of [appellant's] work."

{¶36} Appellant also notes that, on June 4, 2006, appellant signed a "Driver Application". However, during his deposition, appellant testified that he never completed an employment application. Moreover, the "Driver Application" states that in order to be employed by appellee Chatlain, appellant would have had to have a pre-employment drug test and a physical.  Appellant testified that appellee Chatlain never asked him to undergo a physical examination or drug test.  While an I-9 employment eligibility form was completed for appellant, we find, as did the trial court, that such document does not create a genuine issue of material fact regarding the conduct of the parties.

{¶37} In short, we find that, after reviewing the evidence, reasonable minds could only conclude that appellant was an independent contractor rather than an employee of appellee Chatlain Enterprises and, therefore, was not entitled to workers' compensation benefits. The evidence demonstrates that appellee Chatlain Enterprises

did not control the means or manner of appellant's work.  We find, therefore, that the trial court did not err in granting summary judgment to appellees.

{¶38}  Appellant's sole assignment of error is, therefore, overruled.

{¶39}  Accordingly, the judgment of the Richland County Court of Common Pleas is affirmed.


By: Edwards, J.

Gwin, P.J. and

Wise, J. concur

_____

_____

_____

JUDGES

JAE/d0413

[Cite as *Ehrhardt v. Chatlain Ents., Inc.*, 2011-Ohio-3223.]

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| KENNETH EHRHARDT | : | |
| | : | |
| Plaintiff-Appellant | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| CHATLAIN ENTERPRISES, INC., et al., | : | |
| | : | |
| Defendants-Appellees | : | CASE NO. 10CA123 |

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Richland County Court of Common Pleas is affirmed. Costs assessed to appellant.

_____

_____

_____

JUDGES